IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SYNDI CO. D/B/A TRIPLE TIED OUT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-03668 |
| | § | |
| TRIPLE TIE LLC | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF SYNDI'S ORIGINAL COMPLAINT

Plaintiff Syndi Co., D/B/A Triple Tied Out ("Syndi"), files its original complaint against Defendant Triple Tie LLC.

### I.
### SUMMARY OF ACTION

1.     Syndi is a well-known accounting business that sells accounting services to property managers. To promote its accounting services, as early as 2017, Syndi has owned and has been utilizing the "TRIPLE TIED OUT" mark. In 2018, Syndi obtained a federal registration on the Principal Register for the "TRIPLE TIED OUT" mark.

2.     As a result of Syndi's continuous and widespread use of its registered trademark, consumers associate the "TRIPLE TIED OUT" mark with Syndi and its superior accounting services. Thus, Syndi's federally registered trademark is incredibly valuable to Syndi's business and reputation.

3.     Like Syndi, Defendant is *also* a business that sells accounting services to property managers. However, *unlike* Syndi, Defendant apparently does not use its own trademarks. Instead, Defendant advertises itself, including through the website www.TripleTied.co ("Infringing Domain

Name"), as "TRIPLE TIE," which is a blatant infringement of Syndi's registered trademark for "TRIPLE TIED OUT".

4.      More disturbing, however, is that Defendant's infringing use of the "TRIPLE TIE" mark deceives customers, including those who have placed Defendant in a position of trust. By calling itself "TRIPLE TIE," Defendant is hoodwinking customers into wrongly believing that they are entrusting their accounting business with professionals associated with or sponsored by Syndi, while in fact, these customers are *actually* working with imposters. And, of course, unlike with Syndi's *own* professionals, Syndi has *no* control over the quality of Defendant's personnel or services.

5.      By tricking accounting customers into purchasing services from Defendant—when they believe they are actually utilizing Syndi—Defendant has essentially pilfered Syndi's profits.  But the damages to Syndi hardly stops at lost profits. Indeed, by calling itself "TRIPLE TIE," Defendant has caused Syndi to lose, among other things, both the ability to control its trademarks as source indicators for Syndi's services as well as Syndi's own sterling reputation (especially to the extent any of Defendant's accounting customers are dissatisfied with their experience with Defendant and attribute it to Syndi).

6.      In May 2023, Syndi notified Defendant of Syndi's registered trademark for "TRIPLE TIE", and the impropriety and illegality of Defendant's use of the infringing "TRIPLE TIE" mark. However, rather than cease and desist from continuing to use the "TRIPLE TIE" mark, in August 2023, Defendant filed with the United States Patent and Trademark Office ("USPTO") a petition to cancel Syndi's registered trademark for "TRIPLE TIED OUT" ("Petition to Cancel").

7.      Accordingly, Syndi seeks legal remedies for Defendant's numerous violations under the federal Lanham Act, including (i) federal trademark infringement under 15 U.S.C. § 1114, (ii) counterfeiting under 15 U.S.C. § 1114, (iii) false designation of origin under 15 U.S.C. § 1125(a), (iv)

unfair competition and false advertising under 15 U.S.C. § 1125(a), and (v) cybersquatting under 15 U.S.C. 1125§(d).

8.       Syndi also asserts claims against Defendant for violations under the Texas state-law counterparts of these federal Lanham Act statutes.

9.       Syndi also seeks a declaratory judgment that Defendant's arguments in the Petition to Cancel are meritless and no basis exists for the TRIPLE TIED OUT trademark to be cancelled.

10.      As remedies for Defendant's legal actions, Syndi seeks: (a) monetary damages (including, but not limited to statutory damages, actual damages, punitive and exemplary damages, attorneys' fees and costs, pre-judgment and post-judgment interest), and (b) declaratory relief.

11.      However, due to the nature of the harm caused by Defendant's deception, monetary damages and declaratory relief are far from adequate remedies at law. To address the immediate and irreparable harm caused by Defendant, Syndi also seeks preliminary and permanent injunctions to prohibit Defendant from, among other things, using the "TRIPLE TIE" mark in connection with the marketing, sale or promotion of accounting services.

12.      Finally, Syndi seeks the transfer of the Infringing Domain Name from Defendant to Syndi, or alternatively, an order by which Defendant forfeits the Infringing Domain Name, or its present ownership interest in it is deemed cancelled.

## II.
## THE PARTIES

13.      Plaintiff Syndi Co. is a corporation duly organized and existing under the laws of the State of Delaware and with its principal place of business at 4201 Main Street, Suite 200-188, Houston Texas 77002.

14.     Upon information and belief, Defendant Triple Tie LLC is a limited liability company duly organized and existing under the laws of the State of New Mexico and with its principal place of business at 1515 E. 20th Street, Suite D, Farmington, New Mexico 87401. Upon information and belief, Defendant may be served through its Founder / CEO, Kristin Johnson, at that address.

### III.
### JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over the parties under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), as certain of Syndi's claims against Defendant arise under the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), (d). Additionally, this Court has original jurisdiction over this action under 28 U.S.C. §§ 1332, as the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

16.     This Court also has both general *and* specific jurisdiction over the parties. This Court has personal jurisdiction over Syndi and, upon information and belief, over Defendant because they both regularly transact substantial business in Texas, thereby making such contacts with Texas both systematic and continuous. Further, upon information and belief, Defendant's acts and omissions giving rise to Syndi's claims occurred in Texas, which is where Syndi experienced the resulting injuries and damages. Additionally, Defendant filed the Petition to Cancel to cancel a registered trademark owned by Syndi, a Texas company, which is the basis for Syndi's claim for declaratory judgment.

17.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## IV.
## FACTS

**A.      Syndi used, registered, and continues to use the "TRIPLE TIED OUT" mark.**

18.      Syndi, which is headquartered in Texas, markets and sells accounting services to property managers in Texas and other states.

19.      On March 8, 2018, Syndi filed a U.S. federal trademark application for the mark "TRIPLE TIED OUT," and on November 6, 2018, the USPTO granted Syndi federal trademark registration no. 5599872 for "TRIPLE TIED OUT" for "Accounting services; Administration, billing and reconciliation of accounts on behalf of others" (the "TRIPLE TIED OUT Trademark Registration"). The TRIPLE TIED OUT Trademark Registration is registered on the Principal Register. A copy of the TRIPLE TIED OUT Trademark Registration is attached hereto as **Exhibit 1** and incorporated herein by reference.

20.      The  TRIPLE TIED OUT Trademark is   a distinctive, valid, protectable, and subsisting trademark. As a result, the   TRIPLE TIED OUT Trademark constitutes *prima facie* evidence of its validity and Syndi's exclusive right to use the TRIPLE TIED OUT Trademark in nationwide commerce in connection with accounting services.

21.      Prior to and in the years since receiving the TRIPLE TIED OUT Trademark Registration, Syndi has utilized the TRIPLE TIED OUT Trademark in advertising and commerce relating to accounting services. As a result of its continuous and widespread use of the TRIPLE TIED OUT Trademark over this period, customers have come to associate the TRIPLE TIED OUT Trademark exclusively with Syndi and its accounting services. As a result, Syndi owns extremely valuable goodwill in these marks for accounting services.

**B.**     **Defendant willfully misused and continues to willfully misuse the TRIPLE TIED OUT Trademark.**

22.     Defendant is a business that sells accounting services.

23.     Pursuant to 15 U.S.C. § 1072, since November 6, 2018, Defendant has had constructive notice of the TRIPLE TIED OUT Trademark Registration ("Constructive Notice").

24.     After receiving Constructive Notice, Defendant began using the mark TRIPLE TIED in connection with accounting services. Indeed, in the Petition to Cancel, Defendant admitted that it "is and has been in the business of providing full-service trust accounting services for property management companies since 2022" and "[s]ince at least as early as June 2022, [Defendant] has used the designation 'tripletie' to identify its services" (collectively, "Infringing Use"). (**Exhibit 2** at ¶¶ 1-2).[1]

25.     Defendant is engaging in the Infringing Use through, among other things, its website at the Infringing Domain Name, www.TripleTie.co ("Infringing Website"). Copies of certain pages from the Infringing Website are attached hereto as **Exhibit 3** and incorporated herein by reference.

26.     Through the Infringing Website and other trade channels, Defendant offered—and continues to offer—accounting services: (a) that are same or substantially similar to the accounting services offered by Syndi, and (b) under the mark "TRIPLE TIED," which is confusingly similar to the TRIPLE TIED OUT Trademark. (*See id.*).

27.     Defendant's improper use of the TRIPLE TIED OUT Trademark (including through Defendant's use of the "TRIPLE TIED" mark by way of the Infringing Use and on the Infringing Website) is without the consent or authorization of Syndi.

---

[1] **Exhibit 2** is a "Petition to Cancel," which is incorporated herein by reference.

28.     Both Syndi and Defendant offer accounting services to clients through the "Rent Vine" property management software (among other trade channels).

29.     Defendant uses the email "kristin@tripletie.co" to contact Syndi's customers on the Rent Vine platform.

30.     Syndi's customers recognize the TRIPLE TIED OUT mark as exclusively associated with Syndi. These customers mistakenly believed that emails from "kristin@tripletie.co" were coming from a representative of Syndi.

31.     In May of 2023, Syndi began receiving communications from customers who mistakenly believed that Defendant was Syndi (the "Actual Confusion").

32.     On May 20, 2023, soon after first learning of Defendant's Infringing Use and the Infringing Website, Syndi sent an email to Defendant providing Defendant with *actual* notice of the TRIPLE TIED OUT Trademark and advising Defendant of the Infringing Use (collectively, "Actual Notice"). A copy of the Actual Notice is attached hereto as **Exhibit 4** and incorporated herein by reference.

33.     On June 19, 2023, Defendant sent Syndi a response letter acknowledging the Actual Notice ("Acknowledgement of Actual Notice"). A copy of the Acknowledgement of Actual Notice is attached hereto as **Exhibit 5** and incorporated herein by reference.

34.     On June 21, 2023, Syndi sent a formal letter to Defendant providing Defendant with further *actual* notice of the TRIPLE TIED OUT Trademark and further advising Defendant of the Infringing Use ("Further Actual Notice"). A copy of the Further Actual Notice is attached hereto as **Exhibit 6** and incorporated herein by reference.

35.     On August 23, 2023, Defendant filed the Petition to Cancel, which contained the Actual Notice, the Acknowledgement of Actual Notice, and the Further Actual Notice.

36.     Despite having Constructive Notice, Actual Notice, and Further Actual Notice, and despite the Acknowledgement of Actual Notice, upon information and belief, Defendant has willfully continued to utilize the mark "TRIPLE TIED" for accounting services (collectively, "Willful Infringement").

**C.     Defendant improperly acquired and uses the Infringing Domain Name.**

37.     Syndi owns and operates a website at www.TRIPLETIEDOUT.com (the "Syndi Website"). Through the Syndi Website, Syndi promotes and sells its accounting services under the TRIPLE TIED OUT Trademark.

38.     Upon information and belief, Defendant owns and operates the Infringing Website at the Infringing Domain Name.

39.     The Infringing Domain Name, www.TripleTied.com, is identical or confusingly similar to the TRIPLE TIED OUT Trademark, which was distinctive when Defendant improperly selected and registered the Infringing Domain Name.

40.     Upon information and belief, Defendant was aware of Syndi's rights in the TRIPLE TIED OUT Trademark when Defendant improperly selected and registered the Infringing Domain Name.

41.     Upon information and belief, Defendant has no rights in or to any trademark or name that is similar to the Infringing Domain Name and is not legitimately known by any name that is similar to the Infringing Domain Name.

42.     Upon information and belief, Defendant had no legitimate purpose for registering the Infringing Domain Name and did so only with a bad faith intent to profit from the goodwill in the TRIPLE TIED OUT Trademark and from use of the Infringing Domain Name.

**D.      Defendant Filed the Meritless Petition to Cancel.**

43.      As stated above, on August 21, 2023, Defendant filed the Petition to Cancel.

44.      The Petition to Cancel seeks cancellation of the TRIPLE TIED OUT Trademark Registration ("Request to Cancel") by alleging and arguing, among other things that: (a) "[t]he mark is or has become generic," "exceeds the scope of permissible registration under 15 U.S.C. § 1052," and suffers from "GENERICNESS UNDER LANHAN [sic] ACT § 14(E)"; (b) "[t]he mark is merely descriptive," "exceeds the scope of permissible registration under 15 U.S.C. § 1052(e)," and should be cancelled under "Trademark Act Sections 14(1) and 2(e)(1)"; (c) the TRIPLE TIED OUT Trademark "was never used in commerce," "never used . . . in connection with any of the services in the Registration," and "should be cancelled under Section 14(6) of the Lanham Act (15 U.S.C. § 1064(6))," and (d) Syndi "obtained the Registration fraudulently," and the TRIPLE TIED OUT TRADEMARK should be cancelled under Trademark Act Section 14(3) and *In re Bose Corp.*, 580 JF.3d 1240, 91 USPQ2d 1938 (Fed. Cir. 2009) (allegations and arguments (a) – (d), along with all other allegations and arguments in the Petition to Cancel, collectively, "Arguments in the Petition to Cancel").

45.      However, the Request to Cancel and the Arguments in the Petition to Cancel are meritless. Indeed, among other reasons: (a) the TRIPLE TIED OUT Trademark is not generic; (b) the TRIPLE TIED OUT Trademark is not "merely descriptive" and in the alternative, has acquired distinctiveness through 5 years of use in commerce and extensive advertising and brand recognition; (c) Syndi has used the TRIPLE TIED OUT Trademark in connection with the services described in its filings with the USPTO; and (d) Syndi did not obtain the TRIPLE TIED OUT Trademark Registration fraudulently or make any fraudulent, untrue, or misleading statements to the USPTO relating to the TRIPLE TIED OUT Trademark or otherwise.

# V.
## CAUSES OF ACTION

### First Cause of Action:
### Federal Trademark Infringement (15 U.S.C. § 1114)

46.     All the foregoing allegations are incorporated by reference for all purposes.

47.     Syndi possesses legally protectable trademarks, including the TRIPLE TIED OUT Trademark.

48.     Syndi's registration of the TRIPLE TIED OUT Trademark with the USPTO is *prima facie* evidence that the TRIPLE TIED OUT Trademark is inherently distinctive.

49.     The acts and omissions of Defendant constitute: (a) use of reproductions, counterfeits, copies or colorable imitations of Syndi's registered TRIPLE TIED OUT Trademark, (b) use of the TRIPLE TIED OUT Trademark without Syndi's consent (and, on the contrary, with Constructive Notice, Actual Notice, and Further Actual Notice),  (c) use of the infringing "TRIPLE TIE" mark in commerce, and (d) use of the infringing "TRIPLE TIE" mark in connection with the sale, offering for sale, distribution, or advertising of accounting services.

50.     The acts and omissions of Defendant further constitute use that is likely to cause consumer confusion, deception, or mistake as to source, sponsorship or approval of Defendant's goods or services in violation of 15 U.S.C. § 1114.

51.     There is also a strong *probability* of confusion because of, among other things: (a) the type of mark Defendant infringed, which is extremely strong due to its distinctiveness (resulting in its federal registration); (b) the strong similarity of the marks since: (i) Defendant's use of the "TRIPLE TIE" mark comprises the first two words in Plaintiff's registered TRIPLE TIED OUT Trademark, and (ii) Defendant's use of the "TRIPLE TIE" mark is significantly similar to Syndi's registered "TRIPLE TIED OUT" mark; (c) the strong similarity of the services, as both Syndi and Defendant provide

similar, if not identical, accounting services, and in particular, accounting services for property managers; (d) the strong similarity of customers, as Syndi and Defendant both work with property managers; (e) the apparent similarity in advertising media, as Syndi and Defendant apparently both advertise through websites, (f) the overlapping trade channels, including both parties use of the Rent Vine software platform to sell their accounting services, and (g) Defendant's intent, which is to trade on Syndi's reputation, as demonstrated by Defendant's use of the infringing "TRIPLE TIE" mark, notwithstanding Constructive Notice, Actual Notice, and Further Actual Notice, and despite the Acknowledgement of Actual Notice.

52.     Defendant's use of the infringing TRIPLE TIE mark has created actual consumer confusion.

53.     As a direct and proximate result of Defendant's federal trademark infringement, Syndi has sustained substantial injury and harm resulting in damages to Syndi, including, among other things, loss of sales and profits, for which Syndi would have realized but for the above-described wrongful activities of Defendant.

54.     Additionally, based on such misconduct by Defendant, Syndi is suffering immediate and irreparable harm for which Syndi has no adequate remedy of law, including, among other things, harm to: (a) the goodwill of the TRIPLE TIED OUT Trademark, (b) Syndi's ability to have the TRIPLE TIED OUT Trademark serve as a source indicator for the services offered under it, (c) Syndi's ability to control the use of the TRIPLE TIED OUT Trademark, (d) the reputations of Syndi, its associates, its products, its services, and its professionals, and (e) other of Syndi's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

55.     Unless this Court enjoins Defendant from its aforementioned infringement (including but not limited to the Willful Infringement and use of the Infringing Website), such irreparable harm will continue.

56.     Defendant's activities were committed willfully, knowingly, maliciously, and in conscious disregard of Syndi's legal rights.

57.     Defendant's trademark infringement has unjustly increased the profits of Defendant's accounting business to the detriment of Syndi and at no cost to Defendant.

58.     Due to Defendant's violations of the Lanham Act, Syndi is entitled to injunctive relief, actual damages, compensatory damages, and punitive damages in amounts to be determined at trial, along with its attorneys' fees and costs under 15 U.S.C. § 1117 (as this is an exceptional case due to Defendant's willful conduct, especially with respect to the Willful Infringement and use of the Infringing Website).

59.     Furthermore, Syndi also seeks all remedies available under the Lanham Act, including, but not limited, to those provided by 15 U.S.C. § 1116(a) and 1117(a).

**Second Cause of Action:**
**Trademark Counterfeiting (15 U.S.C. § 1114)**

60.     All the foregoing allegations are incorporated by reference for all purposes.

61.     Defendant has used spurious designations that are identical with, or substantially indistinguishable from, the TRIPLE TIED OUT Trademark for goods and/or services covered by the registration for the TRIPLE TIED OUT Trademark.

62.     Defendant has intentionally used these spurious designations, knowing they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale, and distribution of accounting services.

63.     Defendant's use of the TRIPLE TIED OUT Trademark to advertise, promote, offer for sale, distribute, and sell accounting services bearing counterfeits of said mark is and has always been without Syndi's consent.

64.     Defendant's unauthorized use of the TRIPLE TIED OUT Trademark on and in connection with its advertisement, promotion, and sale, offering for sale, and distribution of accounting services, including but not limited to the Infringing Website, constitutes Defendant's use of the TRIPLE TIED OUT Trademark in commerce.

65.     Defendant's unauthorized use of the TRIPLE TIED OUT Trademark as set forth above is likely to: (a) cause confusion, mistake, and deception; (b) cause the public to believe that Defendant's accounting services are the same as Syndi's accounting services, that they are authorized, sponsored or approved by Syndi, or that they are otherwise affiliated, connected or associated with or in some way related to Syndi – when in fact they are not; and (c) result in Defendant unfairly benefiting from Syndi's advertising and promotion, and unfairly profiting from the reputation of Syndi and its TRIPLE TIED OUT Trademark, all while causing substantial and irreparable injury to Syndi, the TRIPLE TIED OUT Trademark, and the substantial goodwill represented thereby, and the public.

66.     Defendant's acts constitute willful trademark counterfeiting in violation of 15 U.S.C. § 1114. Indeed, on May 20, 2023, Syndi sent Defendant the Actual Notice, which included a copy of the TRIPLE TIED OUT trademark registration. (*See* **Exhibit 4**). In the more than four months since then, Defendant has apparently still continued to infringe the TRIPLE TIED OUT Trademark willfully and improperly in violation of 15 U.S.C. § 1114.

67.     By reason of the foregoing, Defendant is liable to Syndi for: (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of

the Lanham Act, or, at Syndi's election, an amount representing three (3) times Syndi's damages

and/or Defendant's illicit profits; and (b) reasonable attorneys' fees, investigative fees, costs, and

pre-judgment interest pursuant to 15 U.S.C. § 1117.

### Third Cause of Action:
### False Designation of Origin under the Lanham Act (15 U.S.C. § 1125(a))

68.    All the foregoing allegations are incorporated by reference for all purposes.

69.    The TRIPLE TIED OUT Trademark is a distinctive mark that is associated with Syndi

and exclusively identifies Syndi's business, products, and services.

70.    Defendant has used and continues to use the TRIPLE TIED OUT Trademark in

connection with goods and services: (a) in commerce, (b) in connection with accounting services, and

(c) in a manner that is likely to cause confusion, mistake or deception as to the origin, sponsorship, or

approval of such goods or services.

71.    As a result of Defendant's acts, Syndi is entitled to injunctive relief, actual,

compensatory, and punitive damages in an amount to be determined at trial, along with its attorneys'

fees and costs under 15 U.S.C. § 1117 (as this is an exceptional case due to Defendant's willful

conduct, especially with respect to the Willful Infringement and use of the Infringing Website).

Furthermore, Syndi also seeks all remedies available under the Lanham Act, including, but not limited,

to those provided by 15 U.S.C. § 1116(a) and 1117(a).

### Fourth Cause of Action:
### Unfair Competition/False Advertising under the Lanham Act  (15 U.S.C. § 1125(a))

72.    All the foregoing allegations are incorporated by reference for all purposes.

73.    The TRIPLE TIED OUT Trademark is a distinctive mark that is associated with Syndi

and exclusively identifies Syndi's business, products, and services.

Case 4:23-cv-03668   Document 1   Filed on 09/29/23 in TXSD   Page 15 of 122

74. Defendant has used, and upon information and belief, continues to use, the TRIPLE TIED OUT Trademark in connection with goods or services in a manner that constitutes false and misleading descriptions or representations of fact in commercial advertising or promotion.

75. Defendant has done this through its use of the "TRIPLE TIED" mark, which is use of words, terms, names, symbols or devices tending falsely to describe Defendant's infringing goods and services, namely accounting services, within the meaning of 15 U.S.C. § 1125(a)(1).

76. Accordingly, Defendant misrepresented, and upon information and belief, is continuing to misrepresent the nature, characteristics, and qualities of its goods, services, and or commercial activities.

77. Defendant's use of the TRIPLE TIED OUT Trademark, through its illegal and improper use of the infringing "TRIPLE TIED" mark, constitutes a statement that either deceived or has the capacity of deceiving a substantial segment of potential customers, as it misled or has a probability of misleading potential customers into believing that Defendant (and/or its products, services, activities, and/or personnel) is or was affiliated with or sponsored by Syndi.

78. Defendant's deception was and is material, in that it is likely to have influenced customers' decisions, or will influence customers' decisions, about where to purchase accounting services.

79. Specifically, based on Syndi's goodwill and reputation, Defendant's deception has influenced and/or will likely influence customers into purchasing accounting services from Defendant under the false belief that: (a) Defendant (and/or its products, services, activities, and/or personnel) is affiliated with or sponsored by Syndi and/or (b) the customers purchased, are purchasing, or will be purchasing accounting services from Syndi.

PLAINTIFF SYNDI'S ORIGINAL COMPLAINT                                                      PAGE 15

80.     As a result of Defendant's acts, Syndi is entitled to actual, compensatory, and punitive damages in an amount to be determined at trial, along with its attorneys' fees and costs under 15 U.S.C. § 1117 (as this is an exceptional case due to Defendant's willful conduct, especially with respect to the Willful Infringement and use of the Infringing Website).

81.     As a result of Defendant's acts, Syndi is entitled to injunctive relief.

82.     Furthermore, Syndi also seeks all remedies available under the Lanham Act, including, but not limited, to those provided by 15 U.S.C. § 1116(a) and 1117(a).

### Fifth Cause of Action: Cybersquatting
### (15 U.S.C. § 1125(d))

83.     All the foregoing allegations are incorporated by reference for all purposes.

84.     Syndi owns all rights in and to the TRIPLE TIED OUT Trademark, which is strong and distinctive, and was strong and distinctive as of the date that Defendant registered the Infringing Domain Name.

85.     Defendant registered the Infringing Domain Name, which is identical or confusingly similar to Syndi's TRIPLE TIED OUT Trademark.

86.     Defendant registered the Infringing Domain Name with a bad-faith intent to profit from its confusing similarity to Syndi's TRIPLE TIED OUT Trademark.

87.     Among other things, and upon information and belief, Defendant: (a) registered the Infringing Domain Name, despite knowing that Defendant had no rights in any name or mark and was not legitimately known by any name that was referenced or reflected in the Infringing Domain Name; and (b) made no bona fide, non-infringing, commercial use or fair non-commercial use of the Infringing Domain Name.

88.     Defendant's conduct is directly and proximately causing substantial, immediate, and irreparable harm and injury to Syndi, and to its goodwill and reputation, and such irreparable harm and injury will continue to damage Syndi until and unless such irreparable harm and injury is enjoined by this Court.

89.     Syndi has no adequate remedy at law.

90.     Syndi is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other forms of injunctive relief, transfer of the Infringing Domain Name to Syndi, or in the alternative, an order by which this Court order that Defendant forfeits the Infringing Domain Name and/or that Defendant's ownership interest in the Infringing Domain Name is immediately cancelled.

91.     Syndi is further entitled to recover its damages and Defendant's profits, enhanced as the Court deems appropriate and equitable, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1117(a).

92.     Alternatively, Syndi is entitled to maximum statutory damages in the amount of $100,000 for the Infringing Domain Name pursuant to 15 U.S.C. § 1117(d).

93.     Syndi is further entitled to recover its attorneys' fees and costs, together with prejudgment and post-judgment interest.

**Sixth Cause of Action:**
**Common Law Trademark Infringement and**
**Unfair Competition Claim Under Texas Law**

94.     All the foregoing allegations are incorporated by reference for all purposes.

95.     Defendant's unauthorized use of the TRIPLE TIED OUT Trademark constitutes common law trademark infringement and unfair competition in violation of Texas law.

96.     Due to Defendant's violations of Texas law, Syndi is entitled to actual, compensatory, and punitive damages in an amount to be determined at trial, along with its attorneys' fees and costs.

97.     Due to Defendant's violations of Texas law, Syndi is also entitled to injunctive relief.

**Seventh Cause of Action:**
**Declaratory Judgment (22 U.S.C. §2201 *et seq*)**

98.     All the foregoing allegations are incorporated by reference for all purposes.

99.     Under 28 U.S.C. § 2201(a), "[i]n a case of actual controversy within its jurisdiction," this Court "may declare the rights and other legal relations of any interested party seeking such declaration[.]"

100.    An actual controversy exists due to Defendant's filing of the Petition of Cancellation.

101.    Syndi seeks a declaration that: (a) the Arguments in the Petition to Cancel are meritless; (b) no basis exists for the TRIPLE TIED OUT Trademark Registration to be cancelled; (c) the TRIPLE TIED OUT Trademark is not generic; (d) the TRIPLE TIED OUT TRADEMARK is not "merely descriptive" or in the alternative, has acquired distinctiveness; (e) Syndi has used the TRIPLE TIED OUT Trademark in connection with the services described in its filings with the USPTO; and (f) Syndi did not obtain the TRIPLE TIED OUT TRADEMARK fraudulently.

102.    Additionally, Syndi seeks attorneys' fees and costs relating to its cause of action for declaratory judgment.

**VI.**
**JURY DEMAND**

103.    Pursuant to Federal Rule of Civil Procedure 38(b), Syndi hereby demands a trial by jury on all issues so triable.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, Syndi prays for the following relief:

1.        A preliminary injunction[2] and a permanent injunction restraining Defendant, as well as Defendant's owners, principals, partners, franchisees, agents, employees, licensees, affiliates, distributors, producers, attorneys, and representatives, and all of those in privity with or acting under the direction or control of any of them, from: (a) making any use of the TRIPLE TIED OUT Trademark or any marks confusingly similar to the TRIPLE TIED OUT Trademark, including the infringing "TRIPLE TIED" mark or any other mark containing the words "TRIPLE TIED", in connection or association with the marketing, sale and/or promotion of goods or services related to accounting; (b) directly or indirectly infringing the TRIPLE TIED OUT Trademark in any manner, including but not limited to manufacturing, distributing, advertising, selling, or offering any sale of any products or services that infringe the TRIPLE TIED OUT Trademark and/or that contain the words "TRIPLE TIED," or (c) using the infringing "TRIPLE TIED" mark or any other mark containing the words "TRIPLE TIED," as well as any other mark, word, term, name, symbol, or device, or any combination therefrom on any advertisement, product or product packaging or labeling, or using any false designation of origin, false, or misleading description of fact, or false or misleading representation of fact likely to cause confusion, or to cause mistake or to deceive customers as to the affiliation, connection, or association of Defendant with Syndi or as to the origin, sponsorship, or approval of Defendant's goods or services by Syndi;

---

[2] Syndi reserves its rights to file a separate motion for preliminary injunction (including supporting evidence and briefing) and request a hearing relating to same.

2.　　　Findings in favor of Syndi and against Defendant on all of Syndi's causes of action contained herein;

3.　　　A recovery of actual and compensatory damages to be determined at trial, including, but not limited to Syndi's lost profits, disgorgement of Defendant's wrongfully obtained profits, reputational damages to Syndi (along with its products, services, and professionals), reputational damages and other damages reducing the value of the TRIPLE TIED OUT Trademark, a trebling of monetary awards, an increase in such awards under 15 U.S.C. § 1117, all other damages identified in the paragraphs above, and all other monetary damages permitted by statute or common law whether or not expressly stated above;

4.　　　Transfer of the Infringing Domain Name to Syndi or, in the alternative, an order by which this Court order that Defendant forfeits the Infringing Domain Name and/or that Defendant's ownership interest in the Infringing Domain Name is immediately cancelled;

5.　　　An award to Syndi of punitive/exemplary damages;

6.　　　An award to Syndi of its reasonable attorneys' fees and costs of the action;

7.　　　Pre-judgment interest and post-judgment interest;

8.　　　A declaration that: (a) the Arguments in the Petition to Cancel are meritless, (b) no basis exists for the TRIPLE TIED OUT Trademark Registration to be cancelled; (c) the TRIPLE TIED OUT Trademark is not generic; (d) the TRIPLE TIED OUT Trademark is not "merely descriptive"; (e) Syndi has used the TRIPLE TIED OUT Trademark in connection with the services described in its filings with the USPTO; and (f) Syndi did not obtain the TRIPLE TIED OUT TRADEMARK fraudulently; and

9.　　　Such other and further relief, at law or in equity, to which it may be justly entitled.

DATED: September 29, 2023                  Respectfully submitted,

_____

Barry M. Golden
Texas State Bar. No. 24002149
Southern District of Texas No. 24946
EGAN NELSON LLP
2911 Turtle Creek Blvd., Suite 1100
Dallas, Texas 75219
Office Phone: (214) 628-9500
Mobile Phone: (214) 893-9034
Facsimile: (214) 628-9505
Email: barry.golden@egannelson.com

-AND-

Eric Adler
Washington State Bar No. 49371*
EGAN NELSON LLP
701 Fifth Avenue, 42nd Floor
Seattle, Washington 98104
Office Phone: (206) 753-1450
Email: eric.adler@egannelson.com

**ATTORNEYS FOR PLAINTIFF
SYNDI CO. D/B/A TRIPLE TIED OUT**

*Verified Application for Pro Hac Vice Admission to Be Filed*

# EXHIBIT 1



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Sep 26 03:47:22 EDT 2023*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | SEARCH OG | BOTTOM | HELP |

Logout  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |  *( Use the "Back" button of the Internet Browser to return to TESS)*

## Triple Tied Out

| Word Mark | TRIPLE TIED OUT |
|---|---|
| Goods and Services | IC 035. US 100 101 102. G & S: Accounting services; Administration, billing and reconciliation of accounts on behalf of others. FIRST USE: 20171130. FIRST USE IN COMMERCE: 20171130 |
| Standard Characters Claimed | |
| Mark Drawing Code | (4) STANDARD CHARACTER MARK |
| Serial Number | 87826383 |
| Filing Date | March 8, 2018 |
| Current Basis | 1A |
| Original Filing Basis | 1A |
| Published for Opposition | August 21, 2018 |
| Registration Number | 5599872 |
| Registration Date | November 6, 2018 |
| Owner | (REGISTRANT) Syndico, Inc CORPORATION TEXAS 3011 Bell St Houston TEXAS 77003 |
| | (LAST LISTED OWNER) SYNDI CO. CORPORATION DELAWARE 3011 BELL STREET HOUSTON TEXAS 77003 |
| Assignment Recorded | ASSIGNMENT RECORDED |
| Disclaimer | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "TIED OUT" APART FROM THE MARK AS SHOWN |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

# EXHIBIT 2

*Trademark Trial and Appeal Board Electronic Filing System. https://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA1305029** |
| Filing date: | **08/21/2023** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

## Petition for Cancellation

Notice is hereby given that the following party has filed a petition to cancel the registration indicated below.

## Petitioner information

| Name | TripleTie LLC | | |
|---|---|---|---|
| Entity | Limited Liability Company | Citizenship | New Mexico |
| Address | 1515 E. 20TH STREET, SUITE D<br>FARMINGTON, NM 87401<br>UNITED STATES | | |

| Attorney information | MICHAEL E. BROMS<br>SPENCER FANE LLP<br>1700 LINCOLN STREET<br>SUITE 2000<br>DENVER, CO 80203-4554<br>UNITED STATES<br>Primary email: sfaction@spencerfane.com<br>Secondary email(s): mbroms@spencerfane.com, jallee@spencerfane.com<br>3038393800 |
|---|---|
| Docket no. | 5512172-2DNV |

## Registration subject to cancellation

| Registration no. | 5599872 | Registration date | 11/06/2018 |
|---|---|---|---|
| Register | Principal | | |
| Registrant | SYNDI CO.<br>3011 BELL STREET<br>HOUSTON, TX 77003<br>UNITED STATES | | |

## Goods/services subject to cancellation

Class 035. First Use: Nov 30, 2017 First Use In Commerce: Nov 30, 2017
All goods and services in the class are subject to cancellation, namely: Accounting services; Administration, billing and reconciliation of accounts on behalf of others

## Grounds for cancellation

| | |
|---|---|
| The mark is merely descriptive | Trademark Act Sections 14(1) and 2(e)(1) |
| The mark is or has become generic | Trademark Act Section 14(3) |
| Mark never used in commerce | Trademark Act Section 14(6) |
| Fraud on the USPTO | Trademark Act Section 14(3); In re Bose Corp., 580 F.3d 1240, 91 USPQ2d 1938 (Fed. Cir. 2009) |

| Attachments | 2023-08-21 Petition to Cancel TRIPLE TIED OUT_ RN 5599872.pdf(187590 bytes )<br>Exhibit A.pdf(234206 bytes )<br>Exhibit B.pdf(100249 bytes )<br>Exhibit C.pdf(269995 bytes )<br>Exhibit D.pdf(350284 bytes )<br>Exhibit E.pdf(607742 bytes )<br>Exhibit F.pdf(657968 bytes )<br>Exhibit G.pdf(422694 bytes )<br>Exhibit H.pdf(2579371 bytes )<br>Exhibit I.pdf(56020 bytes )<br>Exhibit J.pdf(271281 bytes )<br>Exhibits K.pdf(396778 bytes ) |
|---|---|

| Signature | /Michael E. Broms/ |
|---|---|
| Name | Michael E. Broms |
| Date | 08/21/2023 |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

| | | |
|---|---|---|
| TRIPLETIE LLC | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | Mark:  TRIPLE TIED OUT |
| v. | ) | |
| | ) | Reg. No. 5,599,872 |
| SYNDI CO. | ) | |
| | ) | |
| *Respondent.* | ) | |

## PETITION TO CANCEL

TripleTie LLC ("<u>Petitioner</u>"), a limited liability company organized and existing under the laws of New Mexico with a principal place of business at 1515 E. 20<sup>th</sup> Street, Suite D, Farmington, NM 87401, believes that it will be damaged by the continued registration of U.S. Trademark Registration No. 5,599,872 for the alleged trademark "triple tied out" (the "<u>Registration</u>"), and hereby petitions to cancel the Registration pursuant to Sections 2(e)(1), 14(3), and 14(6) of the Lanham Trademark Act of 1946 ("<u>Lanham Act</u>") on the grounds that "triple tied out" is a generic or merely descriptive designation for the services in the Registration; the registered services were never used in commerce; and the Registration was obtained by fraud on the USPTO.  As grounds for cancellation, Petitioner alleges as follows:

1.      Petitioner is and has been in the business of providing full-service trust accounting services for property management companies since 2022.  In connection with this business, Petitioner offers for sale and provides trust account clean-up, triple-tied account reconciliations, and ongoing accounting support services.

2.      Since at least as early as June 2022, Petitioner has used the designation "tripletie" to identify its services.

1

3.      On May 20, 2023, based on its alleged rights in the designation "triple tied out," including the Registration, Respondent objected to Petitioner's use of the designation "tripletie" within Petitioner's business name by sending an e-mail to Petitioner demanding Petitioner change its business name.  Attached as **Exhibit A** is a true and correct copy of Respondent's May 20, 2023 e-mail asserting this objection.  Attached as **Exhibit B** is a true and correct copy of Petitioner's June 19, 2023 response letter.

4.      In response to Petitioner's response letter dated June 19, 2023, Respondent maintained it demands.  Attached as **Exhibit C** is a true and correct copy of Respondent's June 21, 2023 response letter.

5.      The designations "triple tie," "triple tie out," "triple tie-out," and "triple tied-out" are phrases commonly used by the accounting industry to identify a three-way reconciliation of a trust account.  Attached as **Exhibit D** are true and correct copies of screen shots from a message board of a property management software company discussing the meaning of the designation "triple tie" and "triple tie out."   Attached as **Exhibit E** are true and correct copies of training materials discussing the meaning of the designations "triple tie," "triple tie out," "triple tie-out," and "triple tied-out."

6.      The generic designation "tie out" has also been used by members of the accounting public referring to checking of source documents to ensure that the statements on the balance sheet are correct.  Attached as **Exhibit F** are true and correct copies of screen shots from the www.thefreedictionary.com showing the meaning of the generic designation "tie out."

7.      The descriptive term "triple" means "having or involving three units or members; having a threefold relation or character; three times repeated."  Attached as **Exhibit G** are true and

2

correct copies of screen shots from the Merriam-Webster Dictionary (online) showing the meaning of the term "triple."

8.      Upon information and belief, Syndi Co. ("Respondent") is a Delaware corporation with an address of 3011 Bell Street, Houston, TX 77003 and an e-mail address of ops@apmhelp.com.

9.      Upon information and belief, on March 8, 2018, Respondent's predecessor in interest, Syndico, Inc. (the "Applicant"), filed Application Serial No. 87/826,383 (the "Application") to register "triple tied out" as a trademark with the United States Patent and Trademark Office in connection with "Accounting services; Administration, billing and reconciliation of accounts on behalf of others," without disclaiming any portion of the alleged mark.

10.     The USPTO initially rejected Application Serial No. 87/826,383 on the grounds that "tied out" is a descriptive designation meaning "in auditing, to check source documents to ensure that the statements on the balance sheet are correct (or to check the balance sheet against the source documents).  In other words, to tie out means to implement the means of auditing the accuracy of documents," requiring disclaimer of the designation "tied out."  Attached as **Exhibit H** is a true and correct copy of the Office Action dated June 19, 2018.

11.     In response to the Office Action, Applicant entered a disclaimer of the words "tied out."  Attached as **Exhibit I** is a true and correct copy of Applicant's response dated June 20, 2018.

12.     In connection with its own business, Respondent uses the designation "triple tied out" descriptively to identify its services.  Respondent's website states "Once your books are Triple Tied Out, you want them to stay that way."  Attached as **Exhibit J** is a true and correct copy of Respondent's website.

3

13.     Respondent's website describes how its accounting services works, namely by providing triple checking of "1 Bank Reconciliations," "2 Tenant Liabilities," and "3 Owner Property Balances."  Attached as **Exhibit K** is a true and correct copy of Respondent's website.

14.     Upon information and belief, Applicant and Respondent provide software as a service (SaaS) featuring software for reconciliation of accounts in the field of property management in International Class 42.

15.     Upon information and belief, Applicant never rendered "Accounting services; Administration, billing and reconciliation of accounts on behalf of others" in International Class 35 at the time of filing the Application.

**FIRST GROUND FOR CANCELLATION –**
**GENERICNESS UNDER LANHAN ACT § 14(3)**

16.     Petitioner repeats and realleges paragraphs 1 through 15 hereof, as if fully set forth herein.

17.     The primary significance of the "triple tied out" to relevant consumers is as a generic designation.  It is therefore incapable of distinguishing Applicant's services from those provided by Petitioner and others in the accounting industry.  By claiming exclusive rights in the designation "triple tied out," Respondent seeks to prevent Petitioner and other legitimate competitors from using the precise and common designation that identifies its account reconciliation services. Petitioner and its competitors providing account reconciliation services, as well as the general public, need to use the designation "triple tied out" to be able to properly identify these services.

18.     Therefore, Petitioner would be injured if Respondent is permitted to maintain a registration for the designation "triple tied out," giving Respondent the right to exclude Petitioner and others in the industry from using generic terminology to identify their accounting services.

4

19.    Based on the foregoing, registration of "triple tied out" exceeds the scope of permissible registration under 15 U.S.C. § 1052 for marks "by which the goods of the applicant may be distinguished from the goods of others."

<div align="center">

**SECOND GROUND FOR CANCELLATION –**
**MERE DESCRIPTIVENESS UNDER LANHAM ACT § 2(e)(1)**

</div>

20.    Petitioner repeats and realleges paragraphs 1 through 19 hereof, as if fully set forth herein.

21.    Upon information and belief, the designation "triple tied out" was merely descriptive of Respondent's services as of the issue date of the Registration.

22.    As a merely descriptive designation, "triple tied out" does not distinguish Respondent's services from those provided by others.

23.    By claiming exclusive rights in the descriptive designation "triple tied out," Respondent seeks to prevent Petitioner from using the designations "triple tie" and/or "tripletie" which is necessary to accurately designate and describe its services.

24.    Therefore, Petitioner is, and will continue to be, injured by the Registration for the merely descriptive designation "triple tied out" because it grants Respondent the right to exclude Petitioner and others in the industry from using ordinary terminology to describe their services.

25.    Based on the foregoing, Respondent's registration of "triple tied out" exceeds the scope of permissible registration under 15 U.S.C. § 1052(e)(1), which prohibits registration of merely descriptive terms.

<div align="center">

**THIRD GROUND FOR CANCELLATION –**
**FRAUD ON THE USPTO UNDER LANHAM ACT § 14(3)**

</div>

26.    Petitioner repeats and realleges paragraphs 1 through 25 hereof, as if fully set forth herein.

<div align="center">

5

</div>

27.     In the Office Action dated June 19, 2018, the USPTO required the following information to permit proper examination of Application Serial No. 87/826,383: "Explain whether the wording in the mark "TRIPLE TIED OUT" has any meaning or significance in the trade or industry in which applicant's goods and/or services are manufactured or provided, or if such wording is a term of art within applicant's industry." *See* **Exhibit H**.

28.     In the Office Action dated June 19, 2018, the USPTO also required responses to the following questions to permit proper examination of Application Serial No. 87/826,383:

   a.     What is the significance of the wording "TRIPLE TIED OUT" in relation to applicant's services?

   b.     What is the significance of the wording "TIED OUT" in relation to applicant's services?

   c.     Does the wording "TRIPLE TIED OUT" or "TIED OUT" in any way relate to applicant's accounting, billing and reconciliation services?

*See* **Exhibit H**.

29.     In Applicant's response dated June 20, 2018, Applicant's President, Taylor Hou ("Hou"), on Applicant's behalf stated to the USPTO that ". . . As it relates to our software as a service (SaaS), Triple Tied Out (specifically Triple) indicates our arbitrary belief that *checking three distinct sections (1. Bank reconciliations 2. Tenant liabilities 3. Property/owner balances)* (emphasis added) will lead to the public's trust in a property manager's ability to stay compliant with local, state, and federal real estate and property management trust accounting guidelines and regulations . . ." and ". . . Triple in "TRIPLE TIED OUT" provides uniqueness to our SaaS as our hope is to have our *3 checks* (emphasis added), together, become the gold standard in our industry." (the "Statement").  *See* **Exhibit I**.

6

DE 8062445.1

30.     Upon information and belief, the Statement was misleading at the time Hou made it on Applicant's behalf because (1) the wording "triple tied out" does not "indicate an arbitrary belief," but clearly describes the three audit checks Applicant performs in the rendering of its SaaS services, and (2) the word "triple" does not provide "uniqueness" to its SaaS, but describes a feature of Applicant's SaaS services.

31.     Upon information and belief, because the common use of the wording "triple tied out," the descriptive meaning of the word "triple" and "tie out" as it relates to Applicant's services, and as evidence obtained through discovery in this proceeding will likely further show, Applicant and Hou knew the Statement was false at the time it was made.

32.     The only reasonable inference from the foregoing is that Hou made the Statement on Applicant's behalf to mislead the USPTO and to cause the USPTO to issue the Registration.

33.     The false Statement was material because, but for the false Statement, the USPTO would not have granted the Registration on the Principle Register without a showing of secondary meaning.  However, in reliance of the false Statement, the USPTO issued the Registration on the Principle Register on November 6, 2018.

34.     Based on the foregoing, Applicant obtained the Registration fraudulently, which is ground for cancellation of the Registration in its entirety.

### FOURTH GROUND FOR CANCELLATION – FRAUD ON THE USPTO AND NONUSE

35.     Petitioner repeats and realleges paragraphs 1 through 34 hereof, as if fully set forth herein.

36.     In the Application filed March 8, 2018, Hou, on Applicant's behalf, declared as follows:

**Basis:**

7

**If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**AND/OR**

**If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

(the "<u>Declaration</u>").

DE 8062445.1

37.     Upon information and belief, Applicant is not now using, and has never used the designation "triple tied out" on or in connection with all the services set forth in the Registration.

38.     On information and belief, when Applicant submitted the Application to the USPTO stating that "[t]he mark is in use in commerce on or in connection with the goods/services in the application," such statement was false.

39.     Being material to the grant of registration, USPTO personnel issued the Registration for the services set forth therein based on the fact that the declarations set forth in the Application were true.

40.     Upon information and belief, Applicant misrepresented the nature of its use of the designation "triple tied out" in commerce when Applicant submitted the Application and continued to prosecute the Application that led to the Registration.

41.     Upon information and belief, Applicant procured the Registration by false means and/or knowingly making false and/or fraudulent declarations or representations to the USPTO, including falsely alleging in the Application that Applicant used the mark in connection with all the services set forth therein, when, on information and belief, Applicant did not use the mark on all recited services at the time of the statement of use and does not currently use the mark on all such services.

42.     Upon information and belief, Hou knew at the time of submitting the Application that the statements regarding the use of services set forth therein were false.

43.     Continued registration of the mark shown in the Registration will result in damage to Petitioner pursuant to the allegations stated above and will create a cloud on the lawful right of Petitioner to adopt and use the designations "triple tie" and "tripletie."

DE 8062445.1

44.     Based on the foregoing, Applicant obtained the Registration fraudulently, which is grounds for cancellation of the Registration in its entirety.

45.     As a further basis for cancellation, because the Respondent and/or Applicant has never used the designation "triple tied out" in connection with any of the services in the Registration, the Registration should be cancelled under Section 14(6) of the Lanham Act (15 U.S.C. § 1064(6)).

DE 8062445.1

WHEREFORE, Petitioner respectfully requests that its cancellation be sustained, and that Respondent's Registration No. 5,599,872 be cancelled.

Dated:  August 21, 2023

Respectfully submitted,

**SPENCER FANE LLP**

/Michael E. Broms/
Michael E. Broms
1700 Lincoln Street, Suite 2000
Denver, CO 80203-4554
Tel: 303-839-3732
mbroms@spencerfane.com

*Attorneys for Petitioner*

11

DE 8062445.1

Exhibit A

From: **Taylor Hou** <taylor@apmhelp.com>
Date: Sat, May 20, 2023 at 9:36 PM
Subject: Notice of infringement on trademark "Triple Tied Out"
To: Syndi Co Ops <ops@apmhelp.com>, <hello@tripletie.co>

Hey Kristin,

I sent you a message on Facebook messenger but to make sure you have received this, I'm sending via email as well.

Fwiw, huge props for kick-starting and having what seems to be an initial great reputation for your trust accounting services for rentvine customers!

Unfortunately, I want to make you aware of the trademark "Triple Tied Out" that we own and this being the first official notice of infringement.



United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat May 20 03:47:23 EDT 2023*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout   Please logout when you are done to release system resources allocated for you.

**Record 1 out of 1**

TSDR   ASSIGN Status   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*



# Triple Tied Out

| | |
|---|---|
| **Word Mark** | **TRIPLE TIED OUT** |
| **Goods and Services** | IC 035. US 100 101 102. G & S: Accounting services; Administration, billing and reconciliation of accounts on behalf of others. FIRST USE: 20171130. FIRST USE IN COMMERCE: 20171130 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87826593 |
| **Filing Date** | March 8, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | August 21, 2018 |
| **Registration Number** | 5599872 |
| **Registration Date** | November 6, 2018 |
| **Owner** | (REGISTRANT) Syndico, Inc CORPORATION TEXAS 3011 Bell St Houston TEXAS 77003 |
| | (LAST LISTED OWNER) SYNDI CO. CORPORATION DELAWARE 3011 BELL STREET HOUSTON TEXAS 77003 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "TIED OUT" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



Please confirm receipt of this email and let's work together on a timeline to help you transition to a new brand.

Cheers,
Taylor
--
Taylor Hou
 APM Help
Chief Happiness Officer
Direct: 713-987-4349 (Call/text)
taylor@apmhelp.com

Schedule time with me here.

Exhibit B



MICHAEL E. BROMS
DIRECT DIAL: 303-592-8375
mbroms@spencerfane.com

File No. 5512172-1

June 19, 2023

**VIA E-MAIL (TAYLOR@APMHELP.COM)**

Syndi Co.
c/o Taylor Hou
3011 Bell Street
Houston, TX 77003

Re:   **Alleged Service Mark Infringement of TRIPLE TIED OUT**

Dear Mr. Hou:

This firm represents TripleTie LLC ("TripleTie") in connection with the above-referenced matter. Please direct all future correspondence to my attention regarding this matter.   We reviewed your correspondence to Ms. Kristin Johnson of TripleTie on behalf of Syndi Co. dated May 20, 2023 concerning your allegations of trademark infringement.   After careful consideration of your allegations that our client's business name is likely to cause customer confusion with the mark TRIPLE TIED OUT (U.S. Trademark Registration No. 5,599,872), we respectfully disagree.

Based on our analysis, the mark TRIPLE TIED OUT is merely descriptive of your services, and not protectable without a showing of secondary meaning.   As you know, the Trademark Office specifically found the terms "TIED OUT" to be descriptive of your accounting services and required a disclaimer of the terms "TIED OUT."   The Trademark Office should have found the term "TRIPLE" to be descriptive of your reconciliation services since the term merely describes the number of sections you check in connection with your services.   As you stated in your response to the Trademark Office during prosecution of the application, "Triple Tied Out (specifically Triple) indicates our arbitrary belief that *checking three distinct sections* (1. Bank reconciliations 2. Tenant liabilities 3. Property/owner balances) will lead to the public's trust in a property manager's ability to stay compliant with local, state, and federal real estate and property management trust accounting guidelines and regulations."   (Office Action Response, Jun. 20, 2018, emphasis added).   Your website clearly describes that your reconciliation services include a three-step audit process, further confirming that the term "TRIPLE" is merely descriptive of your services.

A trademark term is deemed descriptive under trademark law if it describes an ingredient, quality, characteristic, function, feature, purpose, or use of the specified goods or services.   According to the dictionary, the term "triple" means: "consisting of, or involving three parts, things, or people."   Your use of the term "TRIPLE" in connection with your registered services clearly describes a characteristic and feature (*i.e.*, the number of sections checked) of your reconciliation services.   Since all of the words in TRIPLE TIED OUT were descriptive of your services at the time of registration without a showing of secondary meaning, the mark as a whole is merely descriptive and subject to cancellation by the Trademark Trial and Appeal Board ("TTAB").

In addition, there is no likelihood of confusion between the marks, nor has Syndi Co. provided any evidence to support such a finding.   The marks at issue clearly create distinct commercial impressions in



June 19, 2023
Page 2

the minds of the consuming public.  The word TRIPLETIE connotes the interrelatedness of three parts, whereas the terms TRIPLE TIED OUT merely describe your three-step audit process.

        For at least these reasons, we see no likelihood of confusion between the marks and TripleTie is prepared to defend this position.  TripleTie desires to resolve this issue without the need of filing a cancellation proceeding before the TTAB.

        Please contact me directly if you have any questions on this matter.

Sincerely,

Michael E. Broms

cc:    TripleTie LLC

Exhibit C



1980 POST OAK BOULEVARD
SUITE 2300
HOUSTON, TX 77056
TELEPHONE:  713.443.6866
A LIMITED LIABILITY PARTNERSHIP

www.parklegal.com

MICHAEL S. DOWLER
PARTNER
mike@parklegal.com

June 21, 2023

Via Email: mbroms@spencerfance.com

Mr. Michael E. Broms
Spencer Fane LLP
1700 Lincoln St., Suite 2000
Denver, CO 80203-4554

   Re:  Infringement of TRIPLE TIED OUT Service Mark

Dear Mr. Broms:

We represent Syndi Co. in connection with certain intellectual property matters, including the matter wherein Syndi Co. has accused TripleTie LLC of trademark infringement.  This letter responds to your June 19, 2023 letter in that regard.

We respect the arguments in your letter, but must point out that they entirely err as a matter of law and, therefore, do nothing to resolve the parties' dispute.

As an initial matter, the essence of your argument is that you simply disagree with the Trademark Office's decision to issue the TRIPLE TIED OUT mark to Syndi Co.  Indeed, we note your statement to that effect:  "the mark TRIPLE TIED OUT is merely descriptive of your services, and not protectable without a showing of secondary meaning".  Well, the Trademark Office plainly disagrees with you since it examined and issued a registration for the TRIPLE TIED OUT mark, and you have pointed to nothing the Office did not or could not have considered in its examination process.

Your argument that the TRIPLE TIED OUT mark is merely descriptive also errs as a matter of law.  Marks are not parsed word-by-word to see if each word is descriptive, with the conclusion being that the mark as a whole is descriptive if each word by itself is descriptive—as you letter erroneously purports.  Indeed, as you must know, there are numerous registered marks where the Trademark Office first determined that every word in (or part of) a composite mark is descriptive.  *See e.g., In re Shutts,* 217 U.S.P.Q. 363, 364-65 (TTAB 1983) (SNO-RAKE held not merely descriptive); *In re Vienna Sausage Mfg. Co.*, 156 U.S.P.Q. 155, 156 (TTAB 1967) (FRANKWURST held not merely descriptive for wieners, the Board finding that although "frank" may be synonymous with "wiener," and "wurst" synonymous with "sausage," the

combination of the terms is incongruous and results in a mark that is not more than suggestive of the nature of the goods); *In re John H. Breck, Inc.*, 150 U.S.P.Q. 397, 398 (TTAB 1966) (TINT TONE held suggestive for hair coloring, the Board finding that the words overlap in significance and their combination is somewhat incongruous or redundant and does not immediately convey the nature of the products); *In re: DDMB, Inc.,* 2017 WL 915102 (Fed. Cir. 2017) (EMPORIUM ARCADE BAR allowable even though every word is descriptive).

Nor are marks adjudged descriptive in the abstract*, i.e.,* without correlation to the associated goods/services offered under the mark—as you letter again erroneously purports.  A mark is merely descriptive under Trademark Act Section 2(e)(1), (15 U.S.C. 1052(e)(1)), if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the relevant services.  *In re Gyulay*, 820 F.2d 1216 (Fed. Cir. 1987); *In re Bed & Breakfast Registry*, 791 F.2d 157 (Fed. Cir. 1986); *In re MetPath Inc.*, 223 USPQ 88 (TTAB 1984); TMEP section 1209.01(b).  As Syndi Co. told the Trademark Office, "[t]here is no pre-exiting meaning to 'TRIPLE TIED OUT' in the property management industry nor is it a term of art".  Your claim otherwise ignores Syndi Co.'s other comments to the effect that the TRIPLE component of the composite mark represented its "arbitrary" belief, which is a hallmark of distinctiveness.  *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d. 4 (2nd Cir. 1976).

Your letter also assumes there is no secondary meaning associated with TRIPLE TIED OUT.  It is not clear why you have concluded that, especially in light of the fact that the mark has been in continuous use for nearly 5 years.  Indeed, marks that have been in continuous use for more than 5 years cannot be challenged in a cancellation proceeding as descriptive.

Finally, your letter fails to address the fact that your client chose a mark exceedingly and confusingly similar to the TRIPLE TIED OUT mark in the exact same channel of trade.  Of all the marks and business names your client could have chosen, it chose to compete against Syndi Co. using a near exact copy of Syndi Co.'s registered mark.  We note your threat to file a cancellation proceeding.  We invite you to do that or propose another solution to resolve this matter because Syndi Co. is not going to stand idly by and allow the sort of rank unfair competition engaged in by TripleTie.

Sincerely,

Michael Dowler

Exhibit D

Home (/s/)        Help Topics (/s/datacategories)        Online Training (https://training.appfolio.com)triple ti User Community (/s/group/Co rat



Accounting (/s/group/0F980000000DCnbCAG/) — Mary Andersen (/s/profile/00580000008BGYiAAO) (Customer)
August 31, 2017 at 3:19 PM (/s/feed/0D58000003cSqZ7CAK)

Does anyone know someone who can help me triple tie out my bank account? I am located in Vancouver WA.

2 comments        18 views

👍 Like                    💬 Comment                                    ⬆ Share

Misti Hoskins (/s/profile/0058000000CL8MAAA1) (Customer)
6 years ago
AppFolio can. If it is off they can help you find it or show you a work-a-round for the first month to tie things out. Good luck. I spent a while getting the accounts fixed here. I started in February and these accounts were never balanced back to 2015 when they moved over to AppFolio so it was a lot of work.

Like    Reply

Beckie Beck (/s/profile/005800000084PGUAA2) (Customer)
6 years ago
I triple tie-out reconciliation for another Washington client, and all my Oregon clients.

Feel free to give me a call, as it is easier to go through the process over the phone than via e-mai.

Beckie Beck
Pathfinder Solutions
(503) 381-0514

Like    Reply

Write a comment…

Home (/s/)        Help Topics (/s/datacategories)        Online Training (https://training.appfolio.com)        triple tieout        User Community (/s/group/Co...    prat

 **Accounting** (/s/group/0F980000000DCnbCAG/) — **Carmen Sobiewski** (/s/profile/0052E00000FfqHkQAJ) (Customer)
**April 4, 2019 at 6:54 PM** (/s/feed/0D52E00004k1gPJSAY)

Curious to know, what are everybody's thoughts regarding the bank reconciliation process? I'm new to AppFolio, and absolutely hate this bank reconciliation, this so called three-way tieout; it shouldn't be this complicated. Does anyone have an easier way to do this?

16 comments      251 views

👍 Like                    💬 Comment                                      ↗ Share

---

**Property Manager** (/s/profile/0052E00000Lwr64QAB) and **Kelly Gabourel** (/s/profile/00580000008xtT8AAI) like this.

 **Lori Riley** (/s/profile/00580000008fHkNAAU) (Customer)
4 years ago
I gave up on the bank reconciliations. I use QuickBooks for that part of the process.
Like    Reply    1 like

 **Victor Denischik** (/s/profile/00580000008flwxAAA) (Customer)
4 years ago
We do bank rec. in AF, and everything is good. What problems you have?
Like    Reply    1 like

 **Mary Jo** (/s/profile/00580000008fkV7AAI) (Customer)
4 years ago
I also hate the rec process in AF. I don't understand what the adjusted cash balance is and it never reconciles.
Like    Reply

 **Victor Denischik** (/s/profile/00580000008flwxAAA) (Customer)
4 years ago
To get adjusted cash balance: GL ending balance plus/minus outstanding checks, deposits in transfer, etc...
This adjusted cash balance should be equal to bank ending balance.
Like    Reply

 **Shannon Vaughan** (/s/profile/00580000008BIQvAAO) (Desert Properties of Coachella Valley)
4 years ago
Like Victor I also have no issues in rec's in AF. When I first started with AF I had troubles triple-tying, but as I learned I found that everything you do in real life must also be done in AF in order to tie out. Therein lies the trouble for most new users.

An example of not tying out the adjusted cash balance (ACB) would be you made a deposit in real life March 31st, but didn't record in AF at all or on a later date; this is what will mess with the ACB. Make sense?
Like    Reply    3 likes

 **Vicki Chadwick** (/s/profile/0058000000ERka5AAD) (Customer)
4 years ago
Best to do your first bank rec right away. Any issues with not being able to reconcile should be addressed right away. I personally don't have any issues with bank recs but often when helping clients they have not posted transactions correctly and then continue to post month after month without resolving the bank rec issues. It can snow ball quickly! Best to do bank recs in a timely fashion and stay on top of them.
Like    Reply    3 likes

 **Lydia Bare** (/s/profile/00580000008f39SAAQ) (BPM, Inc)
4 years ago
Reconciling each month, including balancing in all sections, is accounting 101. If you cannot get all green, there is something wrong and you should work it until whatever error is found. Ours is off because I didn't get it when we started with AF in 2012. But my ending cash balance is always off by the same amount now, and that is good enough. If we ever get audited, I know there will be an issue and am prepared for it.

My issues are the scroll bar within the scroll bar. SO small. Makes it ridiculously difficult. AF needs to recon so they can feel how user friendly this is not. The "sync" only catches enough to make it messy as well.
Like    Reply    4 likes

 **Susie Lowe** (/s/profile/0058000000EJJiuAAH) (Customer)
4 years ago
I agree with you about the scroll bar. Also, our bank account is linked, but will not sync any transactions. I have found this to make life easier, as I am able to physically track each amount.
Like    Reply

 **Janice Worthen** (/s/profile/0058000000ERZ8eAAH) (Customer)

4 years ago

If it makes you feel any better, the competing software isn't better. The scroll bar within the scroll bar is there.

The bottom line is that you should do your Diagnostics every day/week and always before you reconcile. If you do that and you make sure your bank transfers are recorded properly, you will always balance, assuming you haven't made any other errors with dates, amounts.

If you take a little extra time now, it will work and work well for you long term.

Like    Reply    2 likes

 Laura Brandlen (/s/profile/0058000000CJIVGAA1) (Customer)                                                            ▼

4 years ago

I took over the AF file from two previous bookkeepers/accountants that had many entries that had not been reconciled and an ACB that was off by $1,175.00. I got the ACB figured out right away and have kept that good for the last year and half. It's taken some forensic accounting and a lot of time to figure out the old entries but we have gotten through most of it with some lagging items getting cleaned up now. I have since learned, through an audit, just how crucial that was. The triple tie out helps you make sure that all the properties "individual" bank accounts all match up to what's really in the bank and since we are dealing with other peoples money and subject to audits this is critical. I would not call this "accounting 101" since PM accounting has so many moving parts. I've actually found many bookkeepers/accountants who won't touch PM accounting.

Like    Reply

More comments                                                                                                      10 of 16

 Write a comment...

Home (/s/)          Help Topics (/s/datacategories)          Online Training (https://training.appfolio.com)triple tieout   User Community (/s/group/Co…rat

  Accounting (/s/group/0F980000000DCnbCAG/) — Carmen Sobiewski (/s/profile/0052E00000FfqHkQAJ) (Customer)
April 4, 2019 at 6:54 PM (/s/feed/0D52E00004k1gPJSAY)

Curious to know, what are everybody's thoughts regarding the bank reconciliation process? I'm new to AppFolio, and absolutely hate this bank reconciliation, this so called three-way tieout; it shouldn't be this complicated. Does anyone have an easier way to do this?

16 comments     252 views

👍 Like                    💬 Comment                    ↗ Share

Property Manager (/s/profile/0052E00000Lwr64QAB) and Kelly Gabourel (/s/profile/00580000008xtT8AAI) like this.

  Lori Riley (/s/profile/00580000008fHkNAAU) (Customer)
4 years ago
I gave up on the bank reconciliations. I use QuickBooks for that part of the process.
Like    Reply    1 like

  Victor Denischik (/s/profile/00580000008flwxAAA) (Customer)
4 years ago
We do bank rec. in AF, and everything is good. What problems you have?
Like    Reply    1 like

  Mary Jo (/s/profile/00580000008fkV7AAI) (Customer)
4 years ago
I also hate the rec process in AF. I don't understand what the adjusted cash balance is and it never reconciles.
Like    Reply

  Victor Denischik (/s/profile/00580000008flwxAAA) (Customer)
4 years ago
To get adjusted cash balance: GL ending balance plus/minus outstanding checks, deposits in transfer, etc…
This adjusted cash balance should be equal to bank ending balance.
Like    Reply

  Shannon Vaughan (/s/profile/00580000008BIQvAAO) (Desert Properties of Coachella Valley)
4 years ago
Like Victor I also have no issues in rec's in AF. When I first started with AF I had troubles triple-tying, but as I learned I found that everything you do in real life must also be done in AF in order to tie out. Therein lies the trouble for most new users.

An example of not tying out the adjusted cash balance (ACB) would be you made a deposit in real life March 31st, but didn't record in AF at all or on a later date; this is what will mess with the ACB. Make sense?
Like    Reply    3 likes

  Vicki Chadwick (/s/profile/0058000000ERka5AAD) (Customer)
4 years ago
Best to do your first bank rec right away. Any issues with not being able to reconcile should be addressed right away. I personally don't have any issues with bank recs but often when helping clients they have not posted transactions correctly and then continue to post month after month without resolving the bank rec issues. It can snow ball quickly! Best to do bank recs in a timely fashion and stay on top of them.
Like    Reply    3 likes

  Lydia Bare (/s/profile/00580000008f39SAAQ) (BPM, Inc)
4 years ago
Reconciling each month, including balancing in all sections, is accounting 101. If you cannot get all green, there is something wrong and you should work it until whatever error is found. Ours is off because I didn't get it when we started with AF in 2012. But my ending cash balance is always off by the same amount now, and that is good enough. If we ever get audited, I know there will be an issue and am prepared for it.

My issues are the scroll bar within the scroll bar. SO small. Makes it ridiculously difficult. AF needs to recon so they can feel how user friendly this is not. The "sync" only catches enough to make it messy as well.
Like    Reply    4 likes

  Susie Lowe (/s/profile/0058000000EJJiuAAH) (Customer)
4 years ago
I agree with you about the scroll bar. Also, our bank account is linked, but will not sync any transactions. I have found this to make life easier, as I am able to physically track each amount.
Like    Reply

  Janice Worthen (/s/profile/0058000000ERZ8eAAH) (Customer)

4 years ago

If it makes you feel any better, the competing software isn't better. The scroll bar within the scroll bar is there.

The bottom line is that you should do your Diagnostics every day/week and always before you reconcile. If you do that and you make sure your bank transfers are recorded properly, you will always balance, assuming you haven't made any other errors with dates, amounts.

If you take a little extra time now, it will work and work well for you long term.

Like　Reply　2 likes

 Laura Brandlen (/s/profile/0058000000CJIVGAA1) (Customer)　　　　　　　　　　　　　▼

4 years ago

I took over the AF file from two previous bookkeepers/accountants that had many entries that had not been reconciled and an ACB that was off by $1,175.00. I got the ACB figured out right away and have kept that good for the last year and half. It's taken some forensic accounting and a lot of time to figure out the old entries but we have gotten through most of it with some lagging items getting cleaned up now. I have since learned, through an audit, just how crucial that was. The triple tie out helps you make sure that all the properties "individual" bank accounts all match up to what's really in the bank and since we are dealing with other peoples money and subject to audits this is critical. I would not call this "accounting 101" since PM accounting has so many moving parts. I've actually found many bookkeepers/accountants who won't touch PM accounting.

Like　Reply

---

More comments

　Write a comment...

Exhibit E

# Glossary of Terms Used in AppFolio Property Manager

There are multiple terms specific to the property management industry, but those most likely vary from office to office.

Below is a list of the most commonly used terms in the AppFolio Property Manager software to help when communicating with your colleagues and AppFolio's Customer Success Team!

**Glossary:**

- Property Terms
- General Accounting Terms
- Security Deposit/ Liabilities Terms
- Bank Reconciliation Terms

---

## Property Terms

- **Single-Family** - Most common type of home. A stand-alone structure with its own lot intended for one family. Also known as SFR.
- **Multi-Family** - Multiple units owned by one or more parties. Condo buildings, duplexes, and apartment buildings fall under this category. Each unit is rented out individually.  Also known as MFR.
- **Student-Housing** - Commonly used to house students. Units can be rented out individually or each bed in the unit can be rented out separately.
- **Commercial** - Property used for business activities and house businesses as tenants. Common Area Maintenance (CAM) is restricted to this property type. Posting listings to our online partners is not supported for Commercial properties.
- **Mixed-Use** - Property used for both residential and business tenants. The CAM function is not available for usage with Mixed-Use properties. It is recommended to make separate properties for the Commercial units and for the residential units if CAM is required.
- **HOA** - Homeowners association. In AppFolio, HOA-type properties looks like Multi-family properties, but the property page represents the Association as a whole, and the units represent the homes, condos, apartments etc. that are part of the association.
- **Vacation** - Property used for housing with short term tenants.
- **Tenant** - Renter, resident, student
- **Homeowner** - Resident of a unit in an HOA-type property.
- **Occupancy** - This refers to a tenant page, or a group of tenants in the same lease that are all recorded on the same tenant page.  You might hear "tenant page" called "occupancy page."
- **Owner** - The owner of a property you manage in AppFolio Property Manager
- **Owner-Operator** - The management company or person who owns and manages their own properties.
- **Fee Manager** - The management company manages properties owned by others and collects a fee/commission for this service.
- **Section 8** - Government subsidized housing offered tenants who qualify for assistance.  Also referred to as HUD, Housing Authority, Affordable Housing, Subsidized Rent

---

# General Accounting Terms

- **Accrual- based Accounting** - A style of accounting that recognizes income when a charge is posted, and expenses when a bill is posted.  The cash item (receipt or payment) is irrelevant to the current income and expense balances. AppFolio offers accrual-based accounting on certain reports.
- **Additional Fees** - Any other fees collected by the property management company in addition to base monthly management fees/ commision.  Common examples include late fees, application fees and NSF fees. These are set on a property page.
- **AP** - Accounts payable
- **AR** - Accounts receivable
- **Bill** - Also called a payable or invoice.  You have to create a bill in order to create a payment for a vendor, owner, tenant or the management company.
- **Cash- based Accounting** - A style of accounting that recognizes income when funds are received, and expenses when a payment is made. AppFolio is cash-based by default.
- **Closing Out a Property** - The process of performing final accounting for a property that you will no longer manage. There is a documented process in AppFolio for closing out a property.
- **CSV File** - Comma-separated values file format.  A type of file format, similar to an excel spreadsheet.
- **eCheck Payables/ Owner & Vendor eCheck** - AppFolio's eCheck feature allows you to send payments electronically to your owners, vendors, and yourself (the management company) so you can save time and money on checks.
- **Escrow Cash** - This refers to the account that the management company uses to hold security deposits and other liabilities.
- **Expense** - Outgoing funds (checks, other payments) that decreases a property's balance.  In AppFolio this is an expense to the property owner (not the management company).
- **General Ledger** - The master accounting report in the system that tracks all financial transactions in every GL account and on each property.
- **GL Account** -  The accounts listed in your chart of accounts.
- **Gross Potential Rent (GPR)** - Reporting that allows you to see the full income potential of a property if all units were rented at market rent, and compare that total to the actual income generated by the property.
- **Homeowner Receipt/Charge/Credit** - The transactions used to enter a payment, charge, or credit for a homeowner in an HOA-type property.  If you do not manage any HOA-type properties in AppFolio, you will not see these tasks.
- **Income** - Incoming funds that increase a property balance. In AppFolio, this is income to the owner (not the property management company).
- **"Lease Only" Property** - When a property management company advertises and fills a vacancy, but is not responsible for managing the property thereafter.  You might charge a Lease Up fee for this service.
- **Lease Up/ Rent Up Fee** - A fee charged by the property management company when they sign a new lease.  Usually not a monthly expense to the owner.
- **Management Fees/ Commission** - The percentage or flat fee the management company collects every month for their services.
- **NSF** - When an non-online or online payment is rejected due to insufficient funds or a number of other reasons.  When you get notification that an online payment has been rejected, you'll also see an "R" code that is the reason why the payment was returned.
- **Operating Cash** - This refers to the property owners' funds.
- **Profit & Loss (P&L)** - Profit and loss report. In AppFolio, the Income Statement report is the offered P&L.

- **Tenant eCheck** - A payment made by a tenant from their online portal.  Also referred to as tenant ACH or tenant online payments.
- Tenant ACH or eCheck - Direct electronic payment. Tenant ACH refers to a tenant's eCheck payment to the management company.  AppFolio refers to ACH or direct electronic payments as eCheck.
- **Tenant Receipt/Charge/Credit** - The transactions used to enter a payment, charge, or credit for a tenant in a residential or commercial-type property.
- **Trust Accounting** - The style of accounting employed by AppFolio.  The property manager is entrusted to manage property owners' funds.

## Security Deposit Terms

- **Additional Deposit** - Any liability collected in addition to the standard security deposit liability.  Common examples include a pet deposit or key deposit.
- **Broker Held Security Deposit** -  Also referred to as a "management held" security deposit. When the property management company collects a tenant's deposit and holds it for the entire lease.
- **Last Month's Rent (LMR)** - Property management companies may require tenants to pay first and last month's rent upon signing a lease.  Last month's rent is treated as a liability until the last month of a lease when it's converted to income.
- **Owner Held Security Deposit** - When the property management company collects a tenant's security deposit and immediately pays it out to the property owner who holds it for the duration of the lease.
- **Property Level Liability** - The balance in a property's Escrow Cash GL account as reported on the General Ledger report.  This should always match the total of tenant level liabilities on the property.
- **Tenant Level Liability** - The amount of security deposits plus any additional deposits held by a particular tenant.

## Bank Reconciliation Terms

- **Adjusted Cash Balance (ACB)** - The balance that the system calculates should be in the actual bank account, based on current property balances and pending items (checks and deposits).
- **Closing Accounting Periods** - Locking down a period of time so no one (without permission) can make any changes to transactions in that time frame.
- **In Balance** - When the cleared, ending and Adjust Cash Balances all match in a bank reconciliation.
- **Link with Bank** - Refers to linking a bank account in AppFolio to the bank's online account so it can be used with the Sync Transactions feature.
- **Open Financial Exchange (OFX)** -  A file that you can download from your bank and upload to AppFolio to speed the reconciliation process.
- **Out of Balance**- When your cleared, ending and Adjusted Cash Balances don't match in a bank reconciliation. Usually the cleared and ending balances match, but the Adjusted Cash balance does not.
- **Quicken Interchange Format (QIF)** - A file that you can download from your bank and upload to AppFolio to speed the reconciliation process.
- **Reconcile** - When you match the transactions in recorded in AppFolio to those on a bank statement.  The goal of this is to verify accurate accounting and account balances.
- **Sync Transactions** - The feature in AppFolio that matches transactions in your online bank account/ statement to the transactions recorded in AppFolio during a reconciliation to speed the process.
- **Triple Tie-Out** - This phrase comes up in bank reconciliations, and is what we say when the cleared,

8/16/23, 6:48 PM

ending and adjusted cash balances all match.  This means you can accurately reconcile.  You should not reconcile a bank account when until these three totals match.

The Adjusted Cash Balance represents the amount of money you should have in your bank account, assuming all of the transactions you've entered in AppFolio are accurate. The Adjusted Cash Balance is calculated from the following:

- Property balances (only from properties linked to the current bank account)

- Less unreconciled deposits

- Less unreconciled receipts deposited after the reconciliation period

- Less receipts reversed after reconciliation which have not been deposited

- Less pending online receipts which have not been deposited

- Plus unreconciled checks

- Plus unreconciled eCheck or ACH batches and reversals

- Plus unreconciled eCheck or ACH batches generated after the reconciliation period

- Plus uncleared checks voided after the reconciliation period

The Adjusted Cash Balance **must** match the cleared and ending balances in order to successfully reconcile. We call this a "triple tie-out." If your reconciliation is not triple tied-out, the Adjusted Cash Balance appears in red in the **Reconciliation Summary**.



Click **View Details** to see how the Adjusted Cash Balance displayed is being calculated.

## $13,000.00 ✔

Adjusted Cash Balance

| | | |
|---|---|---|
| | Total Cash Balance | $10,000.00 |
| (−) | Unreconciled Deposits | $1,000.00 |
| (−) | Unreconciled Receipts Deposited after Reconciliation | $0.00 |
| (−) | Receipts Reversed after Reconciliation Which Have Not Been Deposited | $0.00 |
| (−) | Pending Online Receipts Which Have Not Been Deposited | $0.00 |
| (+) | Unreconciled Checks | $4,000.00 |
| (+) | Unreconciled ACH Batches and Reversals | $0.00 |
| (+) | Unreconciled Payments from ACH Batches Generated after Reconciliation | $0.00 |
| (+) | Unreconciled Checks Voided after Reconciliation Period | $0.00 |
| | Total Adjusted Balance | $13,000.00 |

*Balanced*

## How to Troubleshoot an "Out of Balance"

If your Adjusted Cash balance is showing as "Out of Balance", see our Troubleshooting the ACB article.

# Troubleshoot Bank Reconciliation Cleared & Ending Balances

If you cannot get the cleared and ending balances in the reconciliation summary to match after checking off all of the cleared items, use the steps below to troubleshoot.  It is never recommended to click **Reconcile** until the cleared, ending and adjusted cash balances all match - we call this a **triple tie-out.**



## Resolve Transaction Warnings

Resolve **Transactions Warnings** that appear at the top of the bank reconciliation page in the yellow block.  These are transactions AppFolio has pinpointed as issues that will prevent you from reconciling successfully.  AppFolio explains why a particular transaction will cause a problem, and provides a link to the transaction so you can quickly resolve the issue.

There is **one** specific type of Transaction Warning that can affect your cleared and ending balances:



1. Receipts dated during the reconciliation period that have not been deposited.

- The second transaction warning pictured above shows receipts dated within the reconciliation period that have not been deposited.  This does not include online payments that are pending deposit, which do not affect your adjusted cash balance.
- This is an issue because the property balances include the receipt totals, but there are no deposits to reconcile to increase the bank balance also.
- To correct the issue, click **View All** to get a direct link to the receipt.  Open the receipt and create a new bank deposit, edit the receipt date if incorrect, or reverse the receipt if it was entered in error. Repeat for all linked receipts.

## Confirm Statement Balances & End Date

The statement dates entered dictate what transactions appear on the reconciliation page to be cleared, so it is very important these dates are correct.

- **Statement Date** - This is the end date of the bank statement you are currently reconciling, and is usually found towards the top of your bank statement.  Some statements will show the date range, and others might only list the Statement Date, which is the last day contained in the statement period.



- **Beginning Statement Balance** - The beginning statement balance should equal the ending statement balance on your previous reconciliation report in AppFolio.  If it does not match, you need to find out why before continuing with this reconciliation. *It is never recommended to manually edit a bank balance*.
- **Ending Statement Balance** - This is the ending balance on the bank statement you are currently reconciling.



## Record Missing Transactions

Most often, missing transactions include bank fees or NSFs that have not been recorded in AppFolio.  It is ALWAYS a good idea to comb through your bank statement, note any transactions missing from the reconciliation screen, then find out why they aren't showing up.  Common reasons a transaction wouldn't show up is because it was never recorded or was incorrectly dated.

- **Enter missing bank fees** - Record any bank fee charges or credits not already in AppFolio.  See Record Bank Fees for instructions to do this directly from the bank reconciliation page.
- **Process missing NSFs -** If an NSF charge on your bank statement is not reflected in AppFolio, you will need to process that NSF now.  If the NSF was a rejected online payment, visit Process NSF for a Tenant's Online Payment.  If the rejected payment was manually entered by an employee, see Process an NSF for a Tenant Payment.

8/16/23, 6:47 PM

**Tip for Finding Missing Transactions:** Deselect items like NSFs, reversed journal entries, or journal entries that hit two cash accounts linked to the same bank. Next, compare the sum of deposits checked off to the sum of deposits on your bank statement. Add up any NSFs, then add that to the sum of checks and other payments checked off, and compare that total to the sum of withdrawals on your bank statement. This process helps pinpoint the issue to missing or extra deposits, missing or extra payments, or both.

Once your cleared and ending balances match, you can start troubleshooting your Adjusted Cash Balance (if necessary). **Continue on to Troubleshooting the Adjusted Cash Balance**

# What is a QIF & OFX File Import?

The QIF and OFX file import feature helps speed the bank reconciliation process by allowing you to upload an electronic copy of your bank statement in .QiF or .OFX format into AppFolio. AppFolio will automatically match transactions in the uploaded file with those recorded in AppFolio, reducing the amount of transactions you must manually match. Both QIF and OFX formats are industry standard methods for structuring financial information so it can be shared between systems.

- **Quicken Interchange Format (QIF)-**  An open specification for reading and writing financial data.
- **Open Financial Exchange (OFX)**- A data-stream format for exchanging financial information.

---

# Upload QIF or OFX File

Use this feature when you are ready to reconcile a bank account.  Users with permission to reconcile can complete this task.

1. Type "**Reconcile**" into the search bar at the top right and click the matching **Task** from the results.
   - On the Bank Reconciliation page in the **Account Information** section:
   - Use the menu to select the **bank account** you are reconciling.
   - Enter the **Ending Balance** for the period you are reconciling.
   - Click the calendar icon to select the **Statement Date** (end date) of the period you are reconciling.
2. Click anywhere on the page to register this information and update the numbers in the **Reconciliation**



   **Summary**.
3. In the **Tasks** menu on the right, click the **Import QIF/OFX File**.



4. Choose a QIF or OFX bank statement file from your computer or drag and drop it into the window to



upload then click **Submit**.

5.  The system will automatically select transactions it can match on the bank statement file with transactions in AppFolio.  Any transactions that cannot be found will appear in a the **Import Warnings** section.  Click View All to see the details of each transaction that cannot be matched.



6.  Any transactions not matched will remain unselected.  You may have to manually select transactions the system cannot automatically match or recognize, such as journal entries or other payments.
7.  Once all items are accounted for and your **cleared**, **ending** and **adjusted cash balances** match, the reconciliation calculator will show **Balanced.** Click **Reconcile** at the bottom of the page to complete the reconciliation.

  - **Do NOT** click Reconcile unless your cleared, ending and adjusted cash balances all match (triple tie out).  See <u>Troubleshoot Adjusted Cash Balance</u> if your adjusted cash does not match your cleared and ending balances.



The initial bank reconciliation holds significant importance as it establishes the foundation for all subsequent accounting transactions and reconciliations. Your starting bank balances should already be recorded in AppFolio during the implementation process.

It is strongly advised not to reverse any transactions that were established during the migration phase of your onboarding, as these transactions have corresponding offsets that can cause discrepancies to your reconciliation. If you come across any discrepancies in your accounting, please submit a support request to our Customer Care team for guidance on how to rectify them.

If you have cleared all of the transactions you see on your bank statement in AppFolio, and your beginning, ending and adjusted cash balances do not all match, it may be attributed to the following:

- Incorrect starting bank account balances

- Incorrectly established bank adjustments

- Incorrect beginning property cash balances

- Missing uncleared items carried over from your old solution.

- Incorrectly established transactions outside of your cut off date

## Troubleshoot Adjusted Cash for a 1st Month Reconciliation

Your starting bank balance should be equal to your total starting property balances + uncleared checks - uncleared deposits. Please note, is it your responsibility to confirm your property balances and uncleared transactions brought over from your old solution.

### Confirm Balances & Dates on Reconciliation Page

First confirm the following information entered on the reconciliation page is correct:

- **Beginning Statement Balance** - This should be equal to the ending statement balance from your previous reconciliation. If it does not, there is one or more transactions entered that were backdated or edited after they had been reconciled.

- **Beginning Statement Date** - The day after your financial cut-off date.

- **Ending Statement Date** - This is the end date of the bank statement you are currently reconciling.

  - Any transactions outside of the beginning and ending statement date will not be factored in the Adjusted Cash Balance.

- **Ending Statement Balance** - This is the ending balance on the bank statement you are currently reconciling.



- **Adjusted Cash Balance in Calculator** - This is your property balances, plus any uncleared checks and less any uncleared deposits. This should match the ending statement balance exactly and if it does not it will appear in red.

- **Resolve Yellow Transactions Warnings** - These warnings will pinpoint transactions that may be causing issues with the reconciliation and may prevent a triple tie-out. It is best practice to resolve these issues before beginning your reconciliation.



## Review Bank Account Associations & Transactions

If you are working on the first reconciliation for a bank account and find that your adjusted cash does not equal your cleared and ending balances, there are three things you need to verify:

- **Bank account associations** - Use the Bank Account Association report to confirm that there are no incorrect or missing properties tied to this bank account.

- **Property beginning balances** - Run the Trust Account Balance report for the day before your financial cutoff date. Compare these balances with the ending property balances from your old solution.

- **Uncleared items entered as bank adjustments** - Find which transactions were uncleared from the last reconciliation in your old solution and compare these to the bank adjustments in AppFolio.

Exhibit F



## Start Now

1. Click **"Start Now"**
2. Add Site Trust Checker™



🖋 Feedback

# Tie Out

## Tie Out

Slang; in **auditing**, to check source documents to ensure that the statements on the **balance sheet** are correct (or to check the balance sheet against the source documents). In other words, to tie out means to implement the means of auditing the accuracy of documents.

**"CITE"** 🔗 Farlex Financial Dictionary. © 2012 Farlex, Inc. All Rights Reserved

Want to thank TFD for its existence? **Tell a friend about us**, add a link to this page, or visit **the webmaster's page for free fun content**.

Link to this page:

`<a href="https://financial-dictionary.thefreedictionary.com/Tie+Out">Tie Out</a>`

Advertisement. Bad banner? Please let us know Remove Ads

### Flashcards & Bookmarks

Please **log in** or **register** to use Flashcards and Bookmarks. You can also log in with 

FEATURED VIDEOS

Powered by [**primis**]

pearly whites

**pearly whites**

**pearly whites**
A person's set of teeth. *Go To Article*

RELATED ITEMS

**a lot on (one's) plate**
A lot to do. *Watch Video*

**blind spot**
blind spotAn area that is not able to be seen, either due to its... *Watch Video*

**be shot**
be shotTo be physically, mentally, or emotionally exhausted.... *Watch Video*

Advertisement. Bad banner? Please let us know Remove Ads



2023: Best Stocks to Buy
The 3 top stocks that will sky rocket in 2023 - under the radar

Wall Street Kahuna                    Open >

Advertisement. Bad banner? Please let us know Remove Ads

### References in periodicals archive ?

One of the problems I have noticed is that some of them cannot be staked firmly enough to the ground using the stakes provided and/or **tie outs**. When the dog rushes inside one of these poorly secured blinds, the blind tips over with the dog inside.

*In blind sight: keeping your retriever covered up makes a difference over the decoys*

**More results ▶**

### Financial browser ?

Tick indicator
Tick Mark
tick test
Ticker
Ticker symbol
ticker tape
Ticket
Tick-test rules
TICs
Tide
▶Tie Out
Tiebreaker

### Full browser ?

tie oneself up in knots
tie oneself up something
tie onto
tie our hands
tie ourselves in knots
tie ourselves into knots
tie ourselves up in knots
▶ Tie Out
tie over

---

"CITE"



## 2023: Best Stocks to Buy
The 3 top stocks that will sky rocket in 2023 - under the radar

Wall Street Kahuna                                      Open ›

Advertisement. Bad banner? Please let us know Remove Ads

**pearly whites**
A person's set of teeth. *Go To Article*

RELATED ITEMS


**a lot on (one's) plate**
A lot to do. *Watch Video*


**blind spot**
blind spotAn area that is
not able to be seen, either
due to its... *Watch Video*

**be shot**
be shotTo be physically,
mentally, or emotionally
exhausted.... *Watch Video*

Advertisement. Bad banner? Please let us know Remove Ads

### References in periodicals archive    ?

One of the problems I have noticed is that some of them
cannot be staked firmly enough to the ground using the stakes
provided and/or **tie outs**. When the dog rushes inside one of
these poorly secured blinds, the blind tips over with the dog
inside.

*In blind sight: keeping your retriever covered up makes a
difference over the decoys*

**More results ▶**

### Financial browser    ?

Tick Mark
Tick indicator
Tick Mark
tick test
Ticker
Ticker symbol
ticker tape
Ticket
Tick-test rules
TICs
Tide
▶Tie Out
Tiebreaker
Tied Loan
Tied Selling
tie-in agreement
tie-in contract
tie-in sale
tie-in sales
tier
Tier 1 and Tier 2
Tier 1 Capital
Tier 2 Capital
Tier I, II, III, or IV data center

### Full browser    ?

🗨 tie oneself up in knots
🗨 tie oneself up something
🗨 tie onto
🗨 tie our hands
🗨 tie ourselves in knots
🗨 tie ourselves into knots
🗨 tie ourselves up in knots
▶ § Tie Out
🗨 tie over
▥ tie piece
▥ tie piece
▥ Tie pin
▥ Tie plate
▥ tie point
▥ tie rack
▥ tie rod

Advertisement. Bad banner? Please let us know Remove Ads

## More from   THE FREE DICTIONARY

**Mobile Apps**        kindle  Windows  Windows Phone

**Free Tools**  For surfers: Free toolbar & extensions | Word of the Day | Word Finder | Help
For webmasters: Free content | Linking | Lookup box

Terms of Use | Privacy policy | Feedback | Advertise with Us | Copyright © 2003-2023 Farlex, Inc

Disclaimer
All content on this website, including dictionary, thesaurus, literature, geography, and other reference data is for informational purposes only. This information should not be considered
complete, up to date, and is not intended to be used in place of a visit, consultation, or advice of a legal, medical, or any other professional.

Exhibit G



triple                                                    🔍

verb **3** ⌄    Synonyms    Example Sentences    Word History    Phrases Containing    Entrie

◀ ▮▮▮▮▮▮▮▮▮                                                                              ▶

**MAKE SURE THEY'RE
IN THE RIGHT CAR SEAT**

# triple  1 of 3  **verb**

tri·ple    ⟨ˈtri-p⬚ 🔊⟩

**tripled; tripling**    ⟨ˈtri-p(⬚-)liŋ 🔊⟩

Synonyms of *triple* ›

*transitive verb*

**1**    **:** to make three times as great or as many

**2**  **a** **:** to score (a base runner) by a triple

   **b** **:** to bring about the scoring of (a run) by a triple

*intransitive verb*

**1**    **:** to become three times as great or as numerous

       their profits *tripled* last year

**2**    **:** to make a triple in baseball

# triple  2 of 3  **noun**

**1**  **a** **:** a triple sum, quantity, or number

   **b** **:** a combination, group, or series of three

**2**    **:** a base hit that allows the batter to reach third base safely

**3**    **:** TRIFECTA sense 2

▯ Staples Business Advantage.
**Wanting to talk through your option**
Sign up & save 20%⁺                    ⁺Terms & Conditions



verb **3** ⌄    Synonyms    Example Sentences    Word History    Phrases Containing    Entrie

**1**   **:** being three times as great or as many

**2**   **:** having or involving three units or members

    *triple* bypass heart surgery

**3**   **:** having a threefold relation or character

    worked as a double or even *triple* agent

    ‒ *Time*

**4**   **a**  **:** three times repeated **:** TREBLE

    **b**  **:** having three full revolutions

      a *triple* somersault

      a *triple* lutz

**5**   **:** marked by three beats per musical measure

    *triple* meter

**6**   **a**  **:** having units of three components

    *triple* feet

    **b**   **of rhyme**  **:** involving correspondence of three syllables (as in *unfortunate-importunate*)



verb  **3**  ∨ | Synonyms | Example Sentences | Word History | Phrases Containing | Entrie

**Noun**

threesome                              triad

trifecta                               trinity

trio                                   triplet

triumvirate

**Adjective**

threefold                              treble

triadic                                tripartite

triplex

---

See all Synonyms & Antonyms in Thesaurus ›

---

## Verb

He *tripled* his winnings at the track.

The town's population has *tripled* in size.

He *tripled* to right field.

**See More** ∨

## Recent Examples on the Web

Exhibit H

| | |
|---|---|
| **To:** | Syndico, Inc (taylor@apmhelp.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 87826383 - TRIPLE TIED OUT - N/A |
| **Sent:** | 6/19/2018 8:45:17 PM |
| **Sent As:** | ECOM106@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

**OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION**

**U.S. APPLICATION
SERIAL NO.** 87826383

**MARK:** TRIPLE TIED OUT    **\*87826383\***

**CORRESPONDENT
ADDRESS:**
    SYNDICO, INC

    3011 BELL ST

    HOUSTON, TX
77003

**CLICK HERE TO RESPOND TO THIS
LETTER:**

http://www.uspto.gov/trademarks/teas/response_forms.jsp

VIEW YOUR APPLICATION FILE

**APPLICANT:** Syndico,
Inc

**CORRESPONDENT'S
REFERENCE/DOCKET
NO:**

    N/A

**CORRESPONDENT E-
MAIL ADDRESS:**

    taylor@apmhelp.com

## OFFICE ACTION

### STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.  A RESPONSE TRANSMITTED THROUGH THE TRADEMARK ELECTRONIC APPLICATION SYSTEM (TEAS) MUST BE RECEIVED BEFORE MIDNIGHT **EASTERN TIME** OF THE LAST DAY OF THE RESPONSE PERIOD.

**ISSUE/MAILING DATE:** 6/19/2018

**TEAS PLUS OR TEAS REDUCED FEE (TEAS RF) APPLICANTS – TO MAINTAIN LOWER FEE, ADDITIONAL REQUIREMENTS MUST BE MET, INCLUDING SUBMITTING DOCUMENTS ONLINE:** Applicants who filed their application online using the lower-fee TEAS Plus or TEAS RF application form must (1) file certain documents online using TEAS, including responses to Office actions (see TMEP §§819.02(b), 820.02(b) for a complete list of these documents); (2) maintain a valid e-mail correspondence address; and (3) agree to receive correspondence from the USPTO by e-mail throughout the prosecution of the application.  *See* 37 C.F.R. §§2.22(b), 2.23(b); TMEP §§819, 820.  TEAS Plus or TEAS RF applicants who do not meet these requirements must submit an additional processing fee of $125 per class of goods and/or services.  37 C.F.R. §§2.6(a)(1)(v), 2.22(c), 2.23(c); TMEP §§819.04, 820.04.  However, in certain situations, TEAS Plus or TEAS RF applicants may respond to an Office action by authorizing an examiner's amendment by telephone or e-mail without incurring this additional fee.

The referenced application has been reviewed by the assigned trademark examining attorney.  Applicant must respond timely and completely to the issues below.  15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

**SUMMARY OF ISSUES**
- Disclaimer Required
- Significance of the Mark

**SEARCH OF OFFICE'S DATABASE**

The trademark examining attorney has searched the USPTO's database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d).  TMEP §704.02; *see* 15 U.S.C. §1052(d).

**DISCLAIMER REQUIRED**

Applicant must disclaim the wording "TIED OUT" because it merely describes a feature of applicant's goods and/or services, and thus is an unregistrable component of the mark.  *See* 15 U.S.C. §§1052(e)(1), 1056(a); *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1251, 103 USPQ2d 1753, 1755 (Fed. Cir. 2012) (quoting *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1173, 71 USPQ2d 1370, 1371 (Fed. Cir. 2004)); TMEP §§1213, 1213.03(a).

The attached evidence shows this wording is commonly used in connection with similar services to mean "in auditing, to check source documents to ensure that the statements on the balance sheet are correct (or to check the balance sheet against the source documents). In other words, to tie out means to implement the means of auditing the accuracy of documents." See attached articles showing the descriptive nature of the wording in respect to the same or similar services. This wording is descriptive of applicant's accounting, billing and reconciliation services. Therefore, the wording merely describes a feature of applicant's services and it must be disclaimed.

An applicant may not claim exclusive rights to terms that others may need to use to describe their goods and/or services in the marketplace.  *See Dena Corp. v. Belvedere Int'l, Inc.* , 950 F.2d 1555, 1560, 21 USPQ2d 1047, 1051 (Fed. Cir. 1991); *In re Aug. Storck KG*, 218 USPQ 823, 825 (TTAB 1983).  A disclaimer of unregistrable matter does not affect the appearance of the mark; that is, a disclaimer does not physically remove the disclaimed matter from the mark.  *See Schwarzkopf v. John H. Breck, Inc.*, 340 F.2d 978, 978, 144 USPQ 433, 433 (C.C.P.A. 1965); TMEP §1213.

If applicant does not provide the required disclaimer, the USPTO may refuse to register the entire mark.  *See In re Stereotaxis Inc.*, 429 F.3d 1039, 1040-41, 77 USPQ2d 1087, 1088-89 (Fed. Cir. 2005); TMEP §1213.01(b).

Applicant should submit a disclaimer in the following standardized format:

> **No claim is made to the exclusive right to use "TIED OUT" apart from the mark as shown.**

For an overview of disclaimers and instructions on how to satisfy this disclaimer requirement online using the Trademark Electronic Application System (TEAS) form, please go to http://www.uspto.gov/trademarks/law/disclaimer.jsp.

## SIGNIFICANCE OF THE MARK

To permit proper examination of the application, applicant must provide all the following information:

(1)  **Explain whether the wording in the mark "TRIPLE TIED OUT" has any meaning or significance in the trade or industry in which applicant's goods and/or services are manufactured or provided, or if such wording is a term of art within applicant's industry**.

(2)  <u>**ALSO**</u> **respond to the following questions**:
  · What is the significance of the wording "TRIPLE TIED OUT" in relation to applicant's   services?  Explain.

  · What is the significance of the wording "TIED OUT" in relation to applicant's   services?  Explain.

  ·  Does the wording "TRIPLE TIED OUT" or "TIED OUT" in any way relate to applicant's  accounting, billing and reconciliation services?  Explain.

*See* 37 C.F.R. §2.61(b); TMEP §814.

Failure to comply with a request for information is grounds for refusing registration.  *In re Harley*, 119 USPQ2d 1755, 1757-58 (TTAB 2016); TMEP §814.

## RESPONSE GUIDELINES

For this application to proceed further, applicant must explicitly address each refusal and/or requirement raised in this Office action.  If the action includes a refusal, applicant may provide arguments and/or evidence as to why the refusal should be withdrawn and the mark should register. Applicant may also have other options specified in this Office action for responding to a refusal and should consider those options carefully.  To

respond to requirements and certain refusal response options, applicant should set forth in writing the required changes or statements.  For more information and general tips on responding to USPTO Office actions, response options, and how to file a response online, see "Responding to Office Actions" on the USPTO's website.

If applicant does not respond to this Office action within six months of the issue/mailing date, or responds by expressly abandoning the application, the application process will end and the trademark will fail to register.  *See* 15 U.S.C. §1062(b); 37 C.F.R. §§2.65(a), 2.68(a); TMEP §§718.01, 718.02.  Additionally, the USPTO will not refund the application filing fee, which is a required processing fee.  *See* 37 C.F.R. §§2.6(a)(1)(i)-(iv), 2.209(a); TMEP §405.04.

When an application has abandoned for failure to respond to an Office action, an applicant may timely file a petition to revive the application, which, if granted, would allow the application to return to active status.  *See* 37 C.F.R. §2.66; TMEP §1714.  The petition must be filed within two months of the date of issuance of the notice of abandonment and may be filed online via the Trademark Electronic Application System (TEAS) with a $100 fee.  *See* 37 C.F.R. §§2.6(a)(15)(ii), 2.66(a)(1), (b)(1).

If applicant has questions regarding this Office action, please telephone or e-mail the assigned trademark examining attorney.  All relevant e-mail communications will be placed in the official application record; however, an e-mail communication will not be accepted as a response to this Office action and will not extend the deadline for filing a proper response.  *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.  Further, although the trademark examining attorney may provide additional explanation pertaining to the refusal(s) and/or requirement(s) in this Office action, the trademark examining attorney may not provide legal advice or statements about applicant's rights.  *See* TMEP §§705.02, 709.06.

Note- Mandatory Electronic Filing Rules

**The USPTO proposes to change federal trademark rules to require** applicants and registrants to (1) file submissions concerning applications and registrations online using the USPTO's  Trademark Electronic Application System (TEAS) and (2) provide and maintain an accurate email address for receiving correspondence from the USPTO.  See the Mandatory Electronic Filing Rules webpage for more information.

//Shavell McPherson-Rayburn//

Shavell McPherson-Rayburn

Examining Attorney

Law Office 106

571-272-6121

Shavell.mcpherson-rayburn@uspto.gov

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp.  Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application.  For *technical* assistance with online forms, e-mail TEAS@uspto.gov.  For questions about the Office action itself, please contact the assigned trademark examining attorney.  **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:**  It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants).  If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/. Please keep a copy of the TSDR status screen. If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

https://financial-dictionary.thefreedictionary.com/Tie+Out          06/19/2018 12:04:19 PM

## Tie Out

### Tie Out

Slang; in auditing, to check source documents to ensure that the statements on the balance sheet are correct (or to check the balance sheet against the source documents). In other words, to tie out means to implement the means of auditing the accuracy of documents.

"CITE"®® Farlex Financial Dictionary. © 2012 Farlex, Inc. All Rights Reserved

Want to thank TFD for its existence? Tell a friend about us, add a link to this page, or visit the webmaster's page for free fun content.

Link to this page:

`<a href="https://financial-dictionary.thefreedictionary.com/Tie+Out">Tie Out</a>`

https://financial-dictionary.thefreedictionary.com/Tie+Out          06/19/2018 12:04:19 PM







Advertisement. Bad banner? Please let us know Remove Ads



Advertisement. Bad banner? Please let us know Remove Ads







https://financial-dictionary.thefreedictionary.com/Tie+Out          06/19/2018 12:04:19 PM







https://www.quora.com/What-does-financial-statement-tieouts-mean-10Q-K          06/19/2018 12:07:20 PM

Quora     🔍 Search for questions, peo     Ask New Question     Sign In

Financial Accounting   Accounting   Phrase Definitions   Word Definitions, Terminology, and Jargon

Finance

## What does financial statement tieouts mean (10Q/K)?

Ad by Fiverr.com

**Looking for graphic design services?**

Fiverr can help you find top freelancing designers that fit your graphic design needs.

↗ Watch more at fiverr.com

### 1 Answer

Jeff Carlsen, I'm a CPA with an audit background and SEC reporting and consolidations experience working for large public...

Answered Feb 19, 2014 · Author has 201 answers and 334.2k answer views

"Tie-out" is a reference to the underlying detailed work papers that support a given number that is being disclosed. So, a financial statement tie out for a 10-Q (quarterly filing) or a 10-K (annual filing) consists of all the "proof" in the underlying documentation that is gathered to support the amounts that are included in the ultimate filing.

Doing a tie-out usually involves using some form of commonly accepted referencing system. For most companies, this means each work paper receives an index ID and those index IDs are written next to the financial statement amounts as a way of pointing back to the support.

If you're looking at the Accounts Receivable note to a set of financial statements, you'll probably see tables of numbers, whose totals match what you see on the A/R line on the balance sheet. A common reference for a note is "FN" for footnote. If the A/R note is #3, you might see FN3 to the left of the balance sheet line-item amount. On the footnote support, you'd see a reference to the balance sheet to the right of the amount. Usually a reference on the left of a number means "coming from" and a reference to the right of a number indicates "going to".

Related Questions

What does "per" before the name of signing partner in financial statements mean?

What does this financial statement mean?

What does it mean to sanitize and reverse a financial statement?

What is a financial statement?

How are financial statements linked?

What is adopted financial statement?

How do I create the Financial Statements?

How do I get the financial statement of a company?

Who made the Nagar Palika financial statements?

What is a stock in the financial statements?

Ask New Question

Who made the Nagar Palika financial statements?

What is a stock in the financial statements?

Ask New Question

https://www.quora.com/What-does-financial-statement-beouts-mean-10Q-K          06/19/2018 12.07.20 PM

A full 10-K tie out can take days or weeks to pull together for a decent size team. The tie-out is always provided to the outside audit team who is reviewing, or auditing (in the case of a 10-K), the financial statement and accompanying notes.

Does that help? The easiest way to understand is to see it.

7.3k Views · View Upvoters

Promoted by Triplebyte

**Why is the technical interview false negative rate so high?**

Triplebyte's objective skills-based process reduces bias and pattern matching at top tech companies.

Learn more at triplebyte.com

Related Questions

What does "per" before the name of signing partner in financial statements mean?

What does this financial statement mean?

What does it mean to sanitize and reverse a financial statement?

How are financial statements linked?

What is adopted financial statement?

How do I create the Financial Statements?

How do I get the financial statement of a company?

Who made the Nagar Palika financial statements?

What is a stock in the financial statements?

What is a REBNY Financial Statement?

How can I get a Patanjali financial statement?

What does 2014A mean in financial statement?

Where can I find financial statement?

What are the sections of a financial statement?

Ask New Question



https://www.reddit.com/r/Accounting/comments/3p2eyi/what_is_a_tieout_auditing/?st=jivve7&sh=b63fe4b1
05/19/2018 12:11:34 PM

**What is a Tie-Out (Auditing)** (self.Accounting)
submitted 2 years ago by TheWinterStorm

I feel like an idiot for asking this but what exactly do they mean when they say perform a tie-out of the financial statements? If you had to tie-out a particular statement (e.g. cash flow or income), what exactly are the steps to do that? How would you start something like that? I feel like I have had professors talking about performing a tie-out many times but they never actually explained what it was or how you do it.

8 comments   share   save   hide   report

all 8 comments
sorted by: best ▾

**Want to add to the discussion?**
Post a comment!
CREATE AN ACCOUNT

[–] Foolra56 Big 4 Audit Manager (CPA)  2 points 2 years ago

Well on an audit you get a trial balance and perform a whole bunch of testwork over it. Then the client gives you financial statements and you "tie" them to the numbers you've been auditing per the trial balance, make sure everything is mathematically correct, everything is internally consistent (a schedule of PPE in a footnote gets to the same net amount as is shown on the face of the financials in the balance sheet, for example), etc.

permalink   embed   save

[–] elpachucasunrise  Audit & Assurance  3 points 2 years ago

You literally just take a copy of the financials as provided by client and mark each number included in it to indicate it agrees with the numbers you just audited. If you can operate a red colored pencil you're gonna nail it.

permalink   embed   save

[–] PeaceSentinel47  2 points 2 years ago

So your financial statements say your Accounts Receivable is $1,400,000. So I ask you for the listing of all accounts, i.e. the AR subledger. I need that so I can do my testing - pick a few accounts and test them.

But then I found out that the listing you gave me only adds up to $1,200,000. So the listing you gave me is complete garbage. Why are you hiding $200K? What's the problem there? Or if you weren't trying to hide it, what the hell is wrong with you and your accounting system that you gave me financials that say $1.4M when you can only show me $1.2M???

The tie-out is just to vet all the work auditors did so that we're comfortable nothing has changed on the

https://www.reddit.com/r/Accounting/comments/3p2eyi/what_is_a_tieout_auditing/?st=jlvvve7&sh=b63fe4b1
06/19/2018 12:11:34 PM

the die not to just to recall, the work we audited did so that we're comfortable nothing has changed on the
statements, and that we were working off the right things. In our case above, maybe the $1.2M AR subledger was from
November 30, rather than December 31, you dumb &&&&.

EDIT: Guys, if I can't bitch here, where can I?

permalink   embed   save

load more comments (3 replies)

**MORE COMMENTS**

---

More from r/Accounting                                                    ✕ HIDE

1183   **We made it**   (i.redd.it)
       submitted 6 days ago by Pandamonium98
       91 comments   share   save   hide   report

970    **Useless interns**   (i.redd.it)
       submitted 5 days ago by BizPundit
       71 comments   share   save   hide   report

711    **First-year throwback**   (i.redd.it)
       submitted 4 days ago by RetractableBadge  IT Audit consultant
       28 comments   share   save   hide   report

700    **We should start a petition to change the "sort by new" option into a "LIFO" option on this subreddit**   (self.Accounting)
       submitted 19 hours ago by Vinsanity1014
       26 comments   share   save   hide   report

490    **When your juniors drop the ball and it's the week before sign off**   (i.redd.it)
       submitted 4 days ago by ItsJustAwso  Consulting (ex-B4 audit)
       16 comments   share   save   hide   report

425    **When an intern asks how he can help and you give him a cash flow.**   (i.redd.it)
       submitted 1 day ago by Abookcooker  ACCA Student (UK)
       64 comments   share   save   hide   report

363    **When you are arrested for possession of black tar heroin**   (i.redd.it)
       submitted 5 days ago by ChiNor
       11 comments   share   save   hide   report

397    **When you realize the intern has spent 2 hours trying to track down a 75 cent variance on a multi-million dollar account.**   (i.imgur.com)
       submitted 12 hours ago by BigQubed  Internal Audit Manager
       54 comments   share   save   hide   report

316    **Spotted in Texas**   (i.redd.it)
       submitted 3 days ago by Johnnc96
       33 comments   share   save   hide   report

269    **Partners and senior management at open-bar corporate events.**   (i.redd.it)
       submitted 3 days ago by PCAOB-I-See-You
       9 comments   share   save   hide   report

---

Comments, continued...

[–] its-an-acrual-world   B4 Advisory | Ex Audit National Firm   1 point 2 years ago

You essentially look through the financial statements and every number is tied and agreed to your work throughout
the audit. Numbers on the face of the statements get tied out and so the numbers in the footnotes, including the
ratios, rates, etc.

You do it for a few reasons. Obviously you don't want to audit a company, give an opinion that their numbers look

Interns/Staff
• Podcast - How to find the best
  external accounting recruiter
• /r/accounting Wiki - FAQs
• /r/Accounting Poll Results
• /r/Accounting's CPA review
  course recommendations -
  2014
• Financial Accounting Lectures
• Brigham Young's Learning
  Accounting Free
• Accounting Coach - For
  Students, Small Business, &
  Bookkeepers
• NotePirate (Youtube Videos)

**Solicitation Policy:** No
solicitations for employment or
commercial service opportunities
are tolerated on /r/accounting. This
is a community to discuss the field
of accounting and to learn how to
navigate the career path.
Advertisements and promotions on
the subreddit are only permissible
through Reddit's Advertising
feature.

**Self-promotion policy:** Self-
promoting of a submitter's personal
or company's content or website is
not permissible without Moderator
permission. The content submitted
must have a sole purpose of
providing a resource or discussion
that benefits the community and
not involve personal motives.

**Filter by Post Type**
Discussion   Career   Advice
Resume   Homework   Offtopic

Undo Filter

**Useful Links**

**General Information**
• Going Concern
• IFRS
• IMA
• IIA
• Big4 AMA
• Growing Need for a Masters
  Degree
• The Résumé Objective
  Statement
• Excel Exposure - Excel
  Lessons
• Interested in Accounting?

https://www.reddit.com/r/Accounting/comments/3p2eyi/what_is_a_tieout_auditing/?st=jilvvve7&sh=b63fe4b1
06/19/2018 12:11:34 PM

You do it for a few reasons. Obviously you don't want to audit a company, give an opinion that their numbers look good and then the financials they draft and send to you don't agree to what your work said.

Other common things are rounding/keying errors. Excel will round numbers so in the face of the statements if a few numbers are rounded, then the numbers on the face may not add up to the total which is why everything will get footed in the financial statements.

permalink   embed   save

[–] PartyPenguin   CantStumpTheTrump   1 point 2 years ago

Firm sanctioned light bondage

permalink   embed   save





| about | help | apps & tools | <3 |
|---|---|---|---|
| blog | site rules | Reddit for iPhone | reddit gold |
| about | Reddit help | Reddit for | redditgifts |
| advertising | center | Android | |
| careers | wiki | mobile website | |
| | reddiquette | | |
| | mod guidelines | | |
| | contact us | | |

Use of this site constitutes acceptance of our User Agreement and Privacy Policy. © 2018 reddit inc. All rights reserved.
REDDIT and the ALIEN Logo are registered trademarks of reddit inc.

| | |
|---|---|
| **To:** | Syndico, Inc (taylor@apmhelp.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 87826383 - TRIPLE TIED OUT - N/A |
| **Sent:** | 6/19/2018 8:45:21 PM |
| **Sent As:** | ECOM106@USPTO.GOV |
| **Attachments:** | |

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

## <u>IMPORTANT NOTICE REGARDING YOUR</u>
## <u>U.S. TRADEMARK APPLICATION</u>

USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED
ON **6/19/2018** FOR U.S. APPLICATION SERIAL NO. 87826383

Your trademark application has been reviewed.  The trademark examining attorney assigned by the USPTO to your application has written an official letter to which you must respond.  Please follow these steps:

**(1)  READ THE LETTER** by clicking on this link or going to http://tsdr.uspto.gov/, entering your U.S. application serial number, and clicking on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2)  RESPOND WITHIN 6 MONTHS** (*or sooner if specified in the Office action*), calculated from **6/19/2018**, using the Trademark Electronic Application System (TEAS) response form located at http://www.uspto.gov/trademarks/teas/response_forms.jsp.  A response transmitted through TEAS must be received before midnight **Eastern Time** of the last day of the response period.

**Do NOT hit "Reply" to this e-mail notification, or otherwise e-mail your response** because the USPTO does NOT accept e-mails as responses to Office actions.

**(3)  QUESTIONS** about the contents of the Office action itself should be directed to the trademark examining attorney who reviewed your application, identified below.

//Shavell McPherson-Rayburn//

Shavell McPherson-Rayburn

Examining Attorney

Law Office 106

571-272-6121

Shavell.mcpherson-rayburn@uspto.gov

## WARNING

_____

**Failure to file the required response by the applicable response deadline will result in the ABANDONMENT of your application.** For more information regarding abandonment, see http://www.uspto.gov/trademarks/basics/abandon.jsp.


**PRIVATE COMPANY SOLICITATIONS REGARDING YOUR APPLICATION:** Private companies **not** associated with the USPTO are using information provided in trademark applications to mail or e-mail trademark-related solicitations. These companies often use names that closely resemble the USPTO and their solicitations may look like an official government document. Many solicitations require that you pay "fees."


Please carefully review all correspondence you receive regarding this application to make sure that you are responding to an official document from the USPTO rather than a private company solicitation. All underline official USPTO correspondence will be mailed only from the "United States Patent and Trademark Office" in Alexandria, VA; or sent by e-mail from the domain "@uspto.gov." For more information on how to handle private company solicitations, see http://www.uspto.gov/trademarks/solicitation_warnings.jsp.

Exhibit I

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTO Form 1957 (Rev 10/2011)
OMB No. 0651-0050 (Exp 09/20/2020)

# Response to Office Action

### The table below presents the data as entered.

| Input Field | Entered |
| --- | --- |
| **SERIAL NUMBER** | 87826383 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 106 |
| **MARK SECTION** | |
| **MARK** | https://tmng-al.uspto.gov/resting2/api/img/87826383/large |
| **LITERAL ELEMENT** | TRIPLE TIED OUT |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size or color. |
| **ADDITIONAL STATEMENTS SECTION** | |
| **DISCLAIMER** | No claim is made to the exclusive right to use TIED OUT apart from the mark as shown. |
| **MISCELLANEOUS STATEMENT** | (1) Explain whether the wording in the mark "TRIPLE TIED OUT" has any meaning or significance in the trade or industry in which applicant's goods and/or services are manufactured or provided, or if such wording is a term of art within applicant's industry. There is no pre-existing meaning to "Triple Tied Out" in the property management industry nor is it a term of art. (2) ALSO respond to the following questions: · What is the significance of the wording "TRIPLE TIED OUT" in relation to applicant's services? Explain. As it relates to our software as a service (SaaS), Triple Tied Out (specifically Triple) indicates our arbitrary belief that checking three distinct sections (1. Bank reconciliations 2. Tenant liabilities 3. Property/owner balances) will lead to the public's trust in a property manager's ability to stay compliant with local, state, and federal real estate and property management trust accounting guidelines and regulations. · What is the significance of the wording "TIED OUT" in relation to applicant's services? Explain. Tied Out is a synonym to "check" or "audit" which is what our SaaS does on a daily basis. It "checks" a customer's financial data. However, no claim is made to the exclusive right to use "TIED OUT" apart from the mark as shown. · Does the wording "TRIPLE TIED OUT" or "TIED OUT" in any way relate to applicant's accounting, billing and reconciliation services? Explain. "TIED OUT" does relate and no claim is made to the exclusive right to use "TIED OUT" apart from the mark as shown but adding Triple in "TRIPLE TIED OUT" provides uniqueness to our SaaS as our hope is to have our 3 checks, together, become the gold standard in our industry. |
| **SIGNATURE SECTION** | |
| **RESPONSE SIGNATURE** | /Taylor Hou/ |
| **SIGNATORY'S NAME** | Taylor Hou |
| **SIGNATORY'S POSITION** | President |
| **SIGNATORY'S PHONE NUMBER** | 7139874349 |
| **DATE SIGNED** | 06/20/2018 |

| AUTHORIZED SIGNATORY | YES |
|---|---|
| **FILING INFORMATION SECTION** | |
| SUBMIT DATE | Wed Jun 20 10:05:05 EDT 2018 |
| TEAS STAMP | USPTO/ROA-XX.XXX.XXX.XXX-20180620100505748444-8782 6383-610dab87b9b56c3cc795 e03145d0cd1b6fb4abde91445 728685806eea932bbfc-N/A-N /A-20180620095821878749 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1957 (Rev 10/2011)
OMB No. 0651-0050 (Exp 09/20/2020)

## Response to Office Action

## To the Commissioner for Trademarks:

Application serial no. **87826383** TRIPLE TIED OUT(Standard Characters, see https://tmng-al.uspto.gov/resting2/api/img/87826383/large) has been amended as follows:

**ADDITIONAL STATEMENTS**
**Disclaimer**
No claim is made to the exclusive right to use TIED OUT apart from the mark as shown.

**Miscellaneous Statement**
(1) Explain whether the wording in the mark "TRIPLE TIED OUT" has any meaning or significance in the trade or industry in which applicant's goods and/or services are manufactured or provided, or if such wording is a term of art within applicant's industry. There is no pre-existing meaning to "Triple Tied Out" in the property management industry nor is it a term of art. (2) ALSO respond to the following questions: · What is the significance of the wording "TRIPLE TIED OUT" in relation to applicant's services? Explain. As it relates to our software as a service (SaaS), Triple Tied Out (specifically Triple) indicates our arbitrary belief that checking three distinct sections (1. Bank reconciliations 2. Tenant liabilities 3. Property/owner balances) will lead to the public's trust in a property manager's ability to stay compliant with local, state, and federal real estate and property management trust accounting guidelines and regulations. · What is the significance of the wording "TIED OUT" in relation to applicant's services? Explain. Tied Out is a synonym to "check" or "audit" which is what our SaaS does on a daily basis. It "checks" a customer's financial data. However, no claim is made to the exclusive right to use "TIED OUT" apart from the mark as shown. · Does the wording "TRIPLE TIED OUT" or "TIED OUT" in any way relate to applicant's accounting, billing and reconciliation services? Explain. "TIED OUT" does relate and no claim is made to the exclusive right to use "TIED OUT" apart from the mark as shown but adding Triple in "TRIPLE TIED OUT" provides uniqueness to our SaaS as our hope is to have our 3 checks, together, become the gold standard in our industry.

**SIGNATURE(S)**
**Response Signature**
Signature: /Taylor Hou/    Date: 06/20/2018
Signatory's Name: Taylor Hou
Signatory's Position: President

Signatory's Phone Number: 7139874349

The signatory has confirmed that he/she is not represented by either an authorized attorney or Canadian attorney/agent, and that he/she is either: (1) the owner/holder ; or (2) a person(s) with legal authority to bind the owner/holder; and if an authorized U.S. attorney or Canadian attorney/agent previously represented him/her in this matter, either he/she has filed a signed revocation of power of attorney with the USPTO or the USPTO has granted the request of his/her prior representative to withdraw.

Serial Number: 87826383
Internet Transmission Date: Wed Jun 20 10:05:05 EDT 2018

TEAS Stamp: USPTO/ROA-XX.XXX.XXX.XXX-201806201005057
48444-87826383-610dab87b9b56c3cc795e0314
5d0cd1b6fb4abde91445728685806eea932bbfc-
N/A-N/A-20180620095821878749

Exhibit J

# HOW IT WORKS

## Softwares We Support Today

Today we support AppFolio, Buildium, Propertyware and Rent Manager for our daily audits. Interested in Triple Tied Out but not using one of these softwares? Drop us a line, we're still developing for new softwares all the time.

   

## Features

Here are some of the great services you get
with your Triple Tied Out subscription.



### Email Notification

Once your books are Triple Tied Out, you want them to stay that way. Never miss an issue with email notifications of any issues so you and your team can resolve them quickly.



### Detail Reporting

Want to know exactly what property or tenant is causing the issue? You'll have access to a secure report that breaks down exactly what's wrong so you can dive in to resolve it.



### Verified Audit Website Badge

Once your books are clean you'll want everyone to know. Use our audit badge to display your clean books on your website and let prospective clients know that you're audit-ready.



### Best In Class Support

Not sure how to resolve an issue? You'll have access to our best in class support team comprised of experts in your particular software. We're here to help.



### Verified Audit Website Badge

Once your books are clean you'll want everyone to know. Use our audit badge to display your clean books on your website and let prospective clients know that you're audit-ready.

### Best In Class Support

Not sure how to resolve an issue? You'll have access to our best in class support team comprised of experts in your particular software. We're here to help.

## Pricing

Affordably priced so there's no reason not to get Triple Tied Out.

✓ Daily Trust Account Audits Results

✓ Detailed reports on Warnings or Fails

✓ Email Notifications

✓ Best-In Class Support

✓ Verified Audit Badge

✓ Our Audit Guarantee

You're just 5 minutes from being in the know.

**TRIPLE** TIED **OUT**

HOW IT WORKS          CONTACT US          AUDIT HELP          GET STARTED

© 2023 Triple Tied Out

AppFolio, Buildium, Propertyware, and Rent Manager are registered trademarks of their respective companies to which Triple Tied Out has no official affiliation.

Exhibit K

**DON'T JUST <u>THINK</u> YOUR BOOKS ARE CLEAN**

**KNOW FOR SURE**



## We Support

         

## Verified Daily Audits
## For Property Managers

Checked, supported, and hosted by our team of AppFolio, Buildium, Propertyware, and Rent Manager Experts - every single day.

VIEW THE LIVE REPORT



Checked



Supported



Hosted

## How It Works

Audit ready, every single day.
That's our guarantee. Here's how we do it:





**Bank Reconciliations**

We are not only checking for up-to-date reconciliation reports, we are also checking to make sure they are done correctly. Grace periods vary amongst states.




We are not only checking for up-to-date reconciliation reports, we are also checking to make sure they are done correctly. Grace periods vary amongst states.

**2**

### Tenant Liabilities

Many property managers disburse prepayments before they are earned. We check to make sure the cash balances cover all of the liabilities.





**3**

### Owner Property Balances

Negative property balances can signify co-mingling of funds. Are you handling owner distributions and workflows correctly? We can tell you.

## Pricing

Affordably priced so there's no reason not to get Triple Tied Out.



✓ Daily Trust Account Audits Results

✓ Detailed reports on Warnings or Fails

✓ Email Notifications

✓ Best-In Class Support

✓ Verified Audit Badge

✓ Our Audit Guarantee

You're just 5 minutes from being in the know.



**Tenant Liabilities**

Many property managers disburse prepayments before they are earned. We check to make sure the cash balances cover all of the liabilities.





**Owner Property Balances**

Negative property balances can signify co-mingling of funds. Are you handling owner distributions and workflows correctly? We can tell you.

# Pricing

Affordably priced so there's no reason not to get Triple Tied Out.



**DAILY AUDIT**

**$0.50/unit**

Per Month (50 unit minimum)

- ✓ Daily Trust Account Audits Results
- ✓ Detailed reports on Warnings or Fails
- ✓ Email Notifications
- ✓ Best-In Class Support
- ✓ Verified Audit Badge
- ✓ Our Audit Guarantee

You're just 5 minutes from being in the know.

**GET STARTED TODAY**

**TRIPLE TIED OUT**

HOW IT WORKS          CONTACT US          AUDIT HELP          GET STARTED

© 2023 Triple Tied Out

AppFolio, Buildium, Propertyware, and Rent Manager are registered trademarks of their respective companies to which Triple Tied Out has no official affiliation.

# EXHIBIT 3



















# EXHIBIT 4

From: **Taylor Hou** <taylor@apmhelp.com>
Date: Sat, May 20, 2023 at 9:36 PM
Subject: Notice of infringement on trademark "Triple Tied Out"
To: Syndi Co Ops <ops@apmhelp.com>, <hello@tripletie.co>

Hey Kristin,

I sent you a message on Facebook messenger but to make sure you have received this, I'm sending via email as well.

Fwiw, huge props for kick-starting and having what seems to be an initial great reputation for your trust accounting services for rentvine customers!

Unfortunately, I want to make you aware of the trademark "Triple Tied Out" that we own and this being the first official notice of infringement.



tmsearch.uspto.gov

**United States Patent and Trademark Office**
Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News
Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat May 20 03:47:23 EDT 2023*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | Browse Dict | SEARCH OG | BOTTOM | HELP

Logout  Please logout when you are done to release system resources allocated for you.

**Record 1 out of 1**

TSDR   ASSIGN Status   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*



# Triple Tied Out

| | |
|---|---|
| **Word Mark** | **TRIPLE TIED OUT** |
| **Goods and Services** | IC 035. US 100 101 102. G & S: Accounting services; Administration, billing and reconciliation of accounts on behalf of others. FIRST USE: 20171130. FIRST USE IN COMMERCE: 20171130 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87826883 |
| **Filing Date** | March 8, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | August 21, 2018 |
| **Registration Number** | 5599872 |
| **Registration Date** | November 6, 2018 |
| **Owner** | (REGISTRANT) Syndico, Inc CORPORATION TEXAS 3011 Bell St Houston TEXAS 77003 |
| | (LAST LISTED OWNER) SYNDI CO. CORPORATION DELAWARE 3011 BELL STREET HOUSTON TEXAS 77003 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "TIED OUT" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | Browse Dict | SEARCH OG | TOP | HELP

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



Please confirm receipt of this email and let's work together on a timeline to help you transition to a new brand.

Cheers,
Taylor
--
Taylor Hou

Chief Happiness Officer
Direct: 713-987-4349 (Call/text)
taylor@apmhelp.com

Schedule time with me here.

# EXHIBIT 5



MICHAEL E. BROMS
DIRECT DIAL: 303-592-8375
mbroms@spencerfane.com

File No. 5512172-1

June 19, 2023

**VIA E-MAIL (TAYLOR@APMHELP.COM)**

Syndi Co.
c/o Taylor Hou
3011 Bell Street
Houston, TX 77003

Re:   **Alleged Service Mark Infringement of TRIPLE TIED OUT**

Dear Mr. Hou:

This firm represents TripleTie LLC ("TripleTie") in connection with the above-referenced matter. Please direct all future correspondence to my attention regarding this matter.   We reviewed your correspondence to Ms. Kristin Johnson of TripleTie on behalf of Syndi Co. dated May 20, 2023 concerning your allegations of trademark infringement.   After careful consideration of your allegations that our client's business name is likely to cause customer confusion with the mark TRIPLE TIED OUT (U.S. Trademark Registration No. 5,599,872), we respectfully disagree.

Based on our analysis, the mark TRIPLE TIED OUT is merely descriptive of your services, and not protectable without a showing of secondary meaning.   As you know, the Trademark Office specifically found the terms "TIED OUT" to be descriptive of your accounting services and required a disclaimer of the terms "TIED OUT."   The Trademark Office should have found the term "TRIPLE" to be descriptive of your reconciliation services since the term merely describes the number of sections you check in connection with your services.   As you stated in your response to the Trademark Office during prosecution of the application, "Triple Tied Out (specifically Triple) indicates our arbitrary belief that *checking three distinct sections* (1. Bank reconciliations 2. Tenant liabilities 3. Property/owner balances) will lead to the public's trust in a property manager's ability to stay compliant with local, state, and federal real estate and property management trust accounting guidelines and regulations."   (Office Action Response, Jun. 20, 2018, emphasis added).   Your website clearly describes that your reconciliation services include a three-step audit process, further confirming that the term "TRIPLE" is merely descriptive of your services.

A trademark term is deemed descriptive under trademark law if it describes an ingredient, quality, characteristic, function, feature, purpose, or use of the specified goods or services.   According to the dictionary, the term "triple" means: "consisting of, or involving three parts, things, or people."   Your use of the term "TRIPLE" in connection with your registered services clearly describes a characteristic and feature (*i.e.*, the number of sections checked) of your reconciliation services.   Since all of the words in TRIPLE TIED OUT were descriptive of your services at the time of registration without a showing of secondary meaning, the mark as a whole is merely descriptive and subject to cancellation by the Trademark Trial and Appeal Board ("TTAB").

In addition, there is no likelihood of confusion between the marks, nor has Syndi Co. provided any evidence to support such a finding.   The marks at issue clearly create distinct commercial impressions in



June 19, 2023
Page 2

the minds of the consuming public.  The word TRIPLETIE connotes the interrelatedness of three parts, whereas the terms TRIPLE TIED OUT merely describe your three-step audit process.

For at least these reasons, we see no likelihood of confusion between the marks and TripleTie is prepared to defend this position.  TripleTie desires to resolve this issue without the need of filing a cancellation proceeding before the TTAB.

Please contact me directly if you have any questions on this matter.

Sincerely,

Michael E. Broms


cc:   TripleTie LLC

# EXHIBIT 6



1980 POST OAK BOULEVARD
SUITE 2300
HOUSTON, TX 77056
TELEPHONE:  713.443.6866
A LIMITED LIABILITY PARTNERSHIP

www.parklegal.com

MICHAEL S. DOWLER
PARTNER
mike@parklegal.com

June 21, 2023

Via Email: mbroms@spencerfance.com

Mr. Michael E. Broms
Spencer Fane LLP
1700 Lincoln St., Suite 2000
Denver, CO 80203-4554

  Re:  Infringement of TRIPLE TIED OUT Service Mark

Dear Mr. Broms:

We represent Syndi Co. in connection with certain intellectual property matters, including the matter wherein Syndi Co. has accused TripleTie LLC of trademark infringement.  This letter responds to your June 19, 2023 letter in that regard.

We respect the arguments in your letter, but must point out that they entirely err as a matter of law and, therefore, do nothing to resolve the parties' dispute.

As an initial matter, the essence of your argument is that you simply disagree with the Trademark Office's decision to issue the TRIPLE TIED OUT mark to Syndi Co.  Indeed, we note your statement to that effect:  "the mark TRIPLE TIED OUT is merely descriptive of your services, and not protectable without a showing of secondary meaning".  Well, the Trademark Office plainly disagrees with you since it examined and issued a registration for the TRIPLE TIED OUT mark, and you have pointed to nothing the Office did not or could not have considered in its examination process.

Your argument that the TRIPLE TIED OUT mark is merely descriptive also errs as a matter of law.  Marks are not parsed word-by-word to see if each word is descriptive, with the conclusion being that the mark as a whole is descriptive if each word by itself is descriptive—as you letter erroneously purports.  Indeed, as you must know, there are numerous registered marks where the Trademark Office first determined that every word in (or part of) a composite mark is descriptive.  *See e.g., In re Shutts,* 217 U.S.P.Q. 363, 364-65 (TTAB 1983) (SNO-RAKE held not merely descriptive); *In re Vienna Sausage Mfg. Co.*, 156 U.S.P.Q. 155, 156 (TTAB 1967) (FRANKWURST held not merely descriptive for wieners, the Board finding that although "frank" may be synonymous with "wiener," and "wurst" synonymous with "sausage," the

combination of the terms is incongruous and results in a mark that is not more than suggestive of the nature of the goods); *In re John H. Breck, Inc.*, 150 U.S.P.Q. 397, 398 (TTAB 1966) (TINT TONE held suggestive for hair coloring, the Board finding that the words overlap in significance and their combination is somewhat incongruous or redundant and does not immediately convey the nature of the products); *In re: DDMB, Inc.,* 2017 WL 915102 (Fed. Cir. 2017) (EMPORIUM ARCADE BAR allowable even though every word is descriptive).

Nor are marks adjudged descriptive in the abstract*, i.e.,* without correlation to the associated goods/services offered under the mark—as you letter again erroneously purports.  A mark is merely descriptive under Trademark Act Section 2(e)(1), (15 U.S.C. 1052(e)(1)), if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the relevant services.  *In re Gyulay*, 820 F.2d 1216 (Fed. Cir. 1987); *In re Bed & Breakfast Registry*, 791 F.2d 157 (Fed. Cir. 1986); *In re MetPath Inc.*, 223 USPQ 88 (TTAB 1984); TMEP section 1209.01(b).  As Syndi Co. told the Trademark Office, "[t]here is no pre-exiting meaning to 'TRIPLE TIED OUT' in the property management industry nor is it a term of art".  Your claim otherwise ignores Syndi Co.'s other comments to the effect that the TRIPLE component of the composite mark represented its "arbitrary" belief, which is a hallmark of distinctiveness.  *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d. 4 (2nd Cir. 1976).

Your letter also assumes there is no secondary meaning associated with TRIPLE TIED OUT.  It is not clear why you have concluded that, especially in light of the fact that the mark has been in continuous use for nearly 5 years.  Indeed, marks that have been in continuous use for more than 5 years cannot be challenged in a cancellation proceeding as descriptive.

Finally, your letter fails to address the fact that your client chose a mark exceedingly and confusingly similar to the TRIPLE TIED OUT mark in the exact same channel of trade.  Of all the marks and business names your client could have chosen, it chose to compete against Syndi Co. using a near exact copy of Syndi Co.'s registered mark.  We note your threat to file a cancellation proceeding.  We invite you to do that or propose another solution to resolve this matter because Syndi Co. is not going to stand idly by and allow the sort of rank unfair competition engaged in by TripleTie.

Sincerely,

Michael Dowler